**RIVERBOAT DEVELOPMENT, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0506–TA–52.

Tax Court of Indiana.

Feb. 22, 2008.

---

Randal J. Kaltenmark, Peter J. Rustho-ven, Larry J. Stroble, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Matthew R. Nicholson, John D. Snethen, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Riverboat Development, Inc. (RDI) challenges the final determinations of the Indiana Department of State Revenue (Department) which held that, for the years ending December 31, 1998, December 31, 1999, December 31, 2000, December 31, 2001, and December 31, 2002 (the years at issue), RDI was subject to the withholding requirements set forth in Indiana Code § 6–3–4–13(a). The matter is currently before the Court on the parties' cross-motions for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The following material facts are undisputed. RDI is a Kentucky S-corporation with its principal place of business in Louisville, Kentucky. During the years at issue, RDI owned a minority membership interest in RDI/Caesars Riverboat Casino LLC (Caesars), an Indiana corporation that owned and operated a riverboat gambling casino and hotel resort in Elizabeth, Indiana. RDI did not conduct any business activity during the years at issue other than that related to its membership interest in Caesars.[1]

During the years at issue, Caesars was treated as a partnership for federal and state income tax purposes. Thus, once Caesars calculated its income, losses, deductions, and tax credits for each particular year, they were "passed through" and taxed to its individual members (*i.e.*, those with ownership interests in Caesars). *See, e.g.*, PAUL J. GALANTI, 17 INDIANA PRACTICE, BUSINESS ORGANIZATIONS § 7A.1 at 56 (Supp.2007). For purposes of calculating its federal taxable income for the years at issue, Caesars deducted its Indiana riverboat wagering tax payments made pursuant to Indiana Code § 4–33–13–1. Caesars, however, failed to "add-back" those deductions for purposes of computing its Indiana adjusted gross income. *See Aztar Ind. Gaming Corp. v. Indiana Dep't of State Revenue*, 806 N.E.2d 381 (Ind. Tax Ct.2004) (holding that while Indiana's riverboat wagering tax payments are deductible for federal income tax purposes, they are not deductible for Indiana income tax purposes), *review denied*. As a result, the K–1 statements issued to RDI by Caesars for the years at issue did not reflect any

---

1. In other words, "[o]ther than passive interest and investment income, all of RDI's taxable income or loss during the [years at issue] was derived from allocations of income or loss made by [Caesars] to RDI in respect [to its m]embership [i]nterest." (Pet'r Br. In Supp. of [its] Mot. for Summ. J. (hereinafter, Pet'r Br.) at 6.)

additional income that would have resulted from the add-back of the deductions.[2]

Based on the K–1s it received from Caesars, RDI in turn issued K–1 statements to each of its shareholders[3] for each of the years at issue.[4] RDI's K–1 statements allocated to its shareholders losses for the 1998, 1999, 2000, and 2001 tax years and income for tax year 2002. RDI did not issue any dividends or distributions of cash or property to its shareholders during any of the years at issue.

The Department subsequently conducted two separate audits of RDI.[5] The Department reasoned that RDI derived its income from the operation of a riverboat in Indiana and, as a result, that income was taxable in Indiana.[6] (*See, e.g.,* Resp't Designated Evidence at A, p. 2 (footnote added).) (*See also* Resp't Br. [In Supp. of] its Mot. for Summ. J. (hereinafter, Resp't Br.) at 7–8.) In turn, the Department determined that when RDI "passed-through" its

Indiana income to its shareholders, it should have withheld, pursuant to Indiana Code § 6–3–4–13, taxes on that income. As a result, the Department issued proposed assessments against RDI for approximately $2.3 million in taxes it should have withheld from its shareholders on the additional distribution that should have been reported to RDI by Caesars had Caesars added back the riverboat wagering tax deductions. (*See, e.g.,* Resp't Designated Evidence at A, p. 1.)

RDI timely protested the proposed assessments. On December 23, 2004, after conducting a hearing, the Department issued two letters of findings (LOFS), both of which denied RDI's protests.

RDI initiated this original tax appeal on June 20, 2005.[7] On March 1, 2007, RDI filed a motion for summary judgment. The Department filed a cross-motion for summary judgment on April 13, 2007.

---

**2.** As such, the K–1s allocated losses to RDI for the 1998, 1999, 2000, and 2001 tax years and income for the 2002 tax year. Caesars made no distributions of cash or property to RDI during the 1998, 1999, and 2000 tax years. Caesars did make cash distributions to RDI during the 2001 and 2002 tax years.

**3.** During the years at issue, RDI had between 33 and 59 shareholders. Of these shareholders, no more than three were Indiana residents.

**4.** S-corporations, like LLCs, are pass-through entities: the income and losses of the S-corporation are passed through to its owners (*i.e.,* shareholders) who, in turn, report their pro-rata shares on their individual tax returns. *See, e.g.,* PAUL J. GALANTI, 20 INDIANA PRACTICE, BUSINESS ORGANIZATIONS § 51.1 at 368 (1991).

**5.** The first audit, relating to tax years 1998 and 1999, was completed by October of 2001. The second audit, relating to tax years 2000, 2001, and 2002, was completed by June of 2004.

**6.** In arriving at this conclusion, the Department cited to sections 702(b) and 1366(b) of

the Internal Revenue Code. (*See, e.g.,* Resp't Designated Evidence at A, p. 2.) Section 702(b) of the Internal Revenue Code states that, *for federal tax purposes,* "[t]he character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share ... shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." I.R.C. § 702(b) (2008). Section 1366(b) of the Internal Revenue Code states that, *for federal tax purposes,* "[t]he character of any item included in a shareholder's pro rata share [of an S-corporation's income] ... shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." I.R.C. § 1366(b) (2008).

**7.** On October 11, 2006, the parties stipulated that the Department's initial calculation of RDI's withholding tax liability had been incorrect and that the proposed assessments should have totaled $1,861,209.59.

The Court conducted a hearing on the parties' motions on August 20, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court reviews the Department's final determinations *de novo*. IND.CODE ANN. § 6-8.1-5-1(i) (West Supp.2008). Accordingly, the Court is not bound by the evidence presented, or the issues raised, at the administrative level. *See Williams v. Indiana Dep't of State Revenue*, 742 N.E.2d 562, 563 (Ind. Tax Ct.2001). Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Williams*, 742 N.E.2d at 563.

## DISCUSSION AND ANALYSIS

S-corporations are exempt from paying Indiana's adjusted gross income tax. *See* IND.CODE ANN. § 6-3-2-2.8(2) (West 1998). *See also supra* note 4. Indiana Code § 6-3-4-13(a) provides, however, that such corporations "shall, at the time that [they] pay[ ] or credit[ ] amounts to any of [their] nonresident shareholders as dividends or as their share of the corporation[s'] undistributed taxable income, withhold the amount prescribed by the [D]epartment." IND.CODE ANN. § 6-3-4-13(a) (West 1998). *See also* 45 IND. ADMIN. CODE 3.1-1-109 (1996) (stating that S-corporations "are required to withhold adjusted gross income tax and county adjusted gross income tax on any nonresident shareholder's share of taxable income of the corporation").

For purposes of Indiana's adjusted gross income tax, the "taxable income" of a nonresident S-corporation, like RDI, is its "adjusted gross income derived from sources within Indiana[.]" IND.CODE ANN. § 6-3-2-1(b) (West 1998). "Adjusted gross income derived from sources within Indiana" means:

(1) income from real or tangible personal property located in [Indiana];

(2) income from doing business in [Indiana];

(3) income from a trade or profession conducted in [Indiana];

(4) compensation for labor or services rendered within [Indiana]; and

(5) income from stocks, bonds, notes, bank deposits, patents, copyrights, secret processes and formulas, good will, trademarks, trade brands, franchises, and other intangible personal property if the receipt from the intangible is attributable to Indiana under [Indiana Code § 6-3-2-2.2].

IND.CODE ANN. § 6-3-2-2(a)(1)-(5) (West 1998).

■ The issue before the Court is whether, during the years at issue, RDI was subject to the withholding requirements set forth in Indiana Code § 6-3-4-13(a). The parties agree, however, that the resolution of the issue is dependent on the answer to a more specific question: is RDI's income, received as a result of its membership interest in Caesars, "adjusted gross income derived from sources within Indiana?" The Court finds that it is not.

■ Indiana Code § 23-18-1-10 defines a membership interest in a limited liability company as "a member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company." IND.CODE ANN. § 23-18-1-10 (West 1998). Pursuant to Indiana Code § 23-18-6-2, "[t]he interest of a member in a limited liability company is personal property." IND.CODE ANN. § 23-18-6-2 (West 1998). Even more specifically, however, this interest constitutes

*intangible* personal property. *See Rhoade v. Indiana Dep't of State Revenue,* 774 N.E.2d 1044, 1048 (Ind. Tax Ct.2002) (citations omitted) (explaining that two statutes relating to the same subject matter will be read *in pari materia* and construed harmoniously). *See also* BLACK'S LAW DICTIONARY 1253–54 (8th ed.2004) (defining intangible property as "[p]roperty that lacks a physical existence[;]" tangible personal property as "personal property that can be seen, weighed, measured, felt, or touched[;]" and tangible property as "[p]roperty that has physical form and characteristics").

Income from intangible personal property is "adjusted gross income derived from sources within Indiana" if "the receipt from the intangible is attributable to Indiana under [Indiana Code § 6–3–2–2.2]." A.I.C. § 6–3–2–2(a)(5). In turn, the relevant portion of Indiana Code § 6–3–2–2.2 (*i.e.,* the portion that refers to investment income) provides that "[r]eceipts in the form of dividends from investments are attributable to this state if the taxpayer's commercial domicile is in Indiana." IND.CODE ANN. § 6–3–2–2.2(g) (West 1998). Here, however, RDI is clearly not commercially domiciled in Indiana. *See* IND. CODE ANN. § 6–3–1–22 (West 1998) (stating that commercial domicile "means the principal place from which the trade or business of the taxpayer is directed or managed").

Given the plain terms of Indiana's statutes, the income RDI received as a result of its membership interest in Caesars is not "adjusted gross income derived from sources within Indiana." As a result, RDI was not subject to the withholding obligations as provided in Indiana Code § 6–3–4–13 during the years at issue.[8]

## CONCLUSION

For the above stated reasons, summary judgment is GRANTED in favor of RDI and AGAINST the Department.

SO ORDERED.

---

8. On a final note, the Department argues that "[i]f RDI's income were deemed to have a source outside Indiana and not in Indiana, where the riverboat casino income was generated, then the nonresident shareholders of RDI would never be taxed by Indiana on their shares ... render[ing] Indiana's composite return provision meaningless." (Resp't Br. at 12.) As explained earlier, however, RDI's income is not generated by the operation of a riverboat in Indiana. Rather, RDI's income is generated as a result of its membership interest in an Indiana limited liability company (*i.e.,* intangible personal property). Pursuant to Indiana law, that income *is not derived from sources within Indiana. See* IND.CODE ANN. §§ 6–3–2–2(a)(5), –2.2(g) (West 1998). Because RDI's income is not Indiana source income, Indiana's composite return provision is not rendered meaningless.