**VODAFONE AMERICAS INC.
and Vodafone Holdings
LLC, Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.**

No. 49T10–1002–TA–7.

Tax Court of Indiana.

June 18, 2013.

Larry J. Stroble, Randal J. Kaltenmark, Ziaaddin Mollabashy, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Timothy A. Schultz, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PETITIONERS' MOTION FOR SUMMARY JUDGMENT

FISHER, Senior Judge.

Vodafone Americas Inc. and Vodafone Holdings LLC (collectively, Vodafone) appeal the two final determinations of the Indiana Department of State Revenue denying their claims for refund of adjusted gross income tax paid during the taxable years ending March 31, 2005 through March 31, 2008 (the years at issue). The appeal is currently before the Court on Vodafone's motion for summary judgment (Motion). In its Motion, Vodafone asks the Court to answer one question: whether the income it received as a partner of a general partnership that was doing business in Indiana was income derived from sources within Indiana. The Court answers that question in the affirmative.

## FACTS AND PROCEDURAL HISTORY

During the years at issue, Vodafone, a Delaware corporation commercially domiciled first in California and then in Colorado, owned a 45% interest in Cellco Partnership, a general partnership also organized under the laws of Delaware.[1]

---

**1.** More specifically, various entities owned by Vodafone owned a total of 45% of Cellco. (*See, e.g.,* Pet'rs' Des'g Evid., App. A, First Stip. Facts at ¶ 3.) Various entities owned by Verizon Communications owned the remaining 55% interest of Cellco. For purposes of this case, however, both Vodafone and the Department have referred to the various enti-

Cellco, which was doing business as Verizon Wireless, provided wireless voice and data services and communications equipment to customers throughout the United States, including Indiana.

Upon receiving its distributive shares of Cellco income, Vodafone filed Indiana adjusted gross income tax returns, reporting a portion of its income was attributable to, and therefore taxable by, Indiana. Vodafone subsequently amended its returns and sought a refund of the tax it paid on the basis that it had erroneously determined that its income was derived from sources within Indiana. The Department denied Vodafone's claims for refund.

Vodafone initiated this original tax appeal on February 2, 2010. On November 16, 2012, Vodafone filed its Motion. The Court conducted a hearing on the Motion on May 16, 2013. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is designed to provide speedy resolution to those cases—or those parts of cases—that may be determined as a matter of law because there are no factual disputes. *Matonovich v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1093, 1096 (Ind. Tax Ct.1999), *review denied;* Ind. Trial Rule 56(C) (explaining that summary judgment is proper only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). When reviewing a motion for summary judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the nonmoving party. *See Scott Oil Co. v. Indiana Dep't of State Revenue*, 584

N.E.2d 1127, 1128–29 (Ind. Tax Ct.1992) (citation omitted).

## ANALYSIS AND ORDER

Vodafone is required to pay a tax on that part of its adjusted gross income derived from sources within Indiana. *See* Ind.Code § 6–3–2–1 (2005) (amended 2011). During the years at issue, "adjusted gross income derived from sources within Indiana" meant:

(1) income from real or tangible personal property located in [Indiana];

(2) income from doing business in [Indiana];

(3) income from a trade or profession conducted in [Indiana];

(4) compensation for labor or services rendered within [Indiana]; and

(5) income from ... intangible personal property if the receipt from the intangible [was] attributable to Indiana under [Indiana Code § 6–3–2–2.2].

Ind.Code § 6–3–2–2(a)(1)–(5) (2005) (amended 2011).

In its Motion, Vodafone argues that the income it received as a result of its partnership interest in Cellco is not adjusted gross income derived from sources within Indiana under Indiana Code § 6–3–2–2(a) and is therefore not taxable. In arriving at that conclusion, Vodafone explains that because a partner's interest in a partnership is defined as intangible personal property, the income it received from Cellco was adjusted gross income derived from sources within Indiana *only* if it was attributable to Indiana under Indiana Code § 6–3–2–2.2(g), "the most applicable" portion of Indiana Code § 6–3–2–2.2. (*See, e.g.,* Pet'rs' Am. Pet. Refund Adjusted Gross Income Tax ("Pet'rs' Am. Pet.") at 4–5 (citations omitted); Pet'rs' Mot. Summ. J. ("Pet'rs Mot.") at 2 (citations

ties collectively (*i.e.,* as either Vodafone or Verizon Communications).

omitted); Pet'rs' Reply Br. Supp. Mot. Summ. J ("Pet'rs' Reply Br.") at 6 (citations omitted).) Indiana Code § 6–3–2–2.2(g) provides that "[r]eceipts in the form of dividends from investments are attributable to this state if the taxpayer's commercial domicile is in Indiana." Ind.Code § 6–3–2–2.2(g) (2005). Given that it is not commercially domiciled in Indiana, Vodafone argues that its income—dividends it received from investing in Cellco—is not derived from sources within Indiana and therefore not taxable. (*See, e.g.,* Pet'rs' Am. Pet. at 4–5 (citations omitted); Pet'rs' Mot. at 2 (citations omitted); Pet'rs' Br. Supp. Mot. Summ. J. ("Pet'rs' Br.") at 8–12; Pet'rs' Reply Br. at 6 (citations omitted).)

Income in the form of "dividends from investments" is sourced pursuant to Indiana Code § 6–3–2–2.2(g). The term "dividends from investments" is cloaked with meaning that is different than that of the general term "dividends" that is used in Indiana Code § 6–3–2–2, Indiana's sourcing statute. *See* I.C. § 6–3–2–2(g), (j). *See also USAir, Inc. v. Indiana Dep't of State Revenue*, 623 N.E.2d 466, 470 (Ind. Tax Ct.1993) (explaining that each and every word used in a statute must be read as having meaning). Indeed, the use of the term "dividends from investments" reflects the distinction between operational income and investment income, a key con-

stitutional concept in the attribution of income among the states.[2] *See, e.g., Allied–Signal, Inc. v. Dir. of Taxation*, 504 U.S. 768, 784–87, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (explaining that the relevant inquiry in sourcing intangible income is whether the intangible asset serves an operational function or an investment function) (footnote added). Thus, the critical question is whether the income Vodafone received as a partner of Cellco had the character of operational income or investment income because if it was operational income, it was not income in the form of "dividends from investments" under Indiana Code § 6–3–2–2(g).[3]

A general partnership is "an association of two (2) or more persons to carry on as co-owners a business for profit[.]" Ind. Code § 23–4–1–6(1) (2005). In its most elemental form, a general partnership is "[a] partnership in which all partners participate fully in running the business and share equally in profits and losses (though the partners' monetary contributions may vary)." Black's Law Dictionary 1230 (9th ed. 2009). *See also* Ind.Code § 23–4–1–24 (2005) (stating that the property rights of a partner in a general partnership are "(1) his rights in specific partnership property, (2) his interest in the partnership, and (3) *his right to participate in the management*") (emphasis added).[4] Thus, the

---

**2.** The distinction between operational income and investment income is important because it ensures that when a state taxes the income of a non-resident who has invested in a business that operates within its jurisdiction, it reaches only that income that is related to the business activity itself, not any income that was generated through an unrelated business activity constituting "a discrete business enterprise." *See Allied–Signal, Inc. v. Dir. of Taxation*, 504 U.S. 768, 780, 785, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992).

**3.** When income does not fit within Indiana Code § 6–3–2–2(a)(1)–(5)'s classifications, it is

sourced to Indiana using the business/nonbusiness income concepts that Indiana adopted from the Uniform Division of Income for Tax Purposes Act (UDITPA). *See* Ind.Code § 6–3–2–2(a) (2005) (amended 2011). *See also May Dep't Stores v. Indiana Dep't of State Revenue*, 749 N.E.2d 651, 655–57 (Ind. Tax Ct.2001).

**4.** Because Vodafone and Cellco are both organized under Delaware law, the Court has also examined Delaware's applicable statutes. Delaware's statutes with respect to general partnerships are comparable to Indiana's. *See* 6 Del.Code § 15–101(6), (11), (15) (2005)

mere fact that Vodafone was a partner in a general partnership gives its income from that partnership the character of operational income. As such, Vodafone's income is not income in the form of "dividends from investments" under Indiana Code § 6–3–2–2.2(g).

Nevertheless, Vodafone argues that the substance of its participation in Cellco's business, and not the business form by which Cellco is organized, should control how its income is characterized. More specifically, Vodafone argues that despite the fact it was a partner in a general partnership, a "lack of control" placed it in essentially the same position as being a limited partner of, or a true "passive investor" in, Cellco. (*See* Pet'rs' Br. at 4; Pet'rs' Reply Br. at 9, 19.) As support for this argument, Vodafone explains that

> [p]ursuant to Section 3.2 of the Cellco Partnership Agreement . . . the business and affairs of Cellco were managed by its Board of Representatives. The Board consisted of nine members. Verizon Communications, as holder of the majority of the partnership interests, appointed five representatives while Vodafone was entitled to appoint four rep-

resentatives[.] Corporate actions . . . required only a majority vote of the Board.[5]

(Pet'rs' Br. at 4–5 (citations omitted) (footnote added).)

A limited partner is a partner in a partnership whose liability is limited to the extent of his original investment in the business enterprise. *See* Black's at 1229. A limited partner is considered a passive investor because the *"quid pro quo "* for his limited liability is his sacrifice of his right to participate in the management of the enterprise. *See* id at 1229 (defining a limited partner as "[a] partner who receives profits from the business but does not take part in managing the business and is [therefore] not liable for any amount greater than his or her original investment"), 1230 (defining limited partnership as "[a] partnership composed of one or more persons who control the business and are personally liable for the partnership's debts (called *general partners* ), and one or more persons who contribute capital and share profits but who cannot manage the business and are liable only for the amount of their contribution (called *limited partners* )").[6,7]

---

(defining "partnership" as an association of two or more persons to carry on any business, purpose or activity; defining "partnership interest" as including a partner's economic interest and his right to participate in management, and defining a partner's "economic interest" as his share of the partnership's profits and losses, and his right to receive distributions).

**5.** Stated differently, Vodafone asserts it lacked control because it held a minority of the partnership interests and appointed a minority of the board of representatives. (Pet'rs' Reply Br. Supp. Mot. Summ. J. ("Pet'rs' Reply Br.") at 16.)

**6.** Both Indiana and Delaware have adopted, and are governed by, the Revised Uniform Limited Partnership Act ("RULPA"). Consequently, their statutes governing limited part-

nerships are very similar. *Cf., e.g.,* Ind.Code § 23–16–1–7 through –9 (2005) with 6 Del. Code § 17–101(5), (8), (9) (2005) (defining limited partnership, general partners, and limited partners). *Cf. also, e.g.,* Ind.Code § 23–16–5–3(a) (2005) with 6 Del.Code § 17–403 (2005) (explaining that with certain exceptions, general partners of a limited partnership possess the same rights, powers, and obligations as partners of a partnership without limited partners (*i.e.,* a general partnership)).

**7.** In order to form a limited partnership, entities must comply with certain statutory filing requirements. *Cf. e.g.,* Ind.Code § 23–16–1–6 (2005); Ind.Code § 23–16–2–2.5 (2005); Ind. Code § 23–16–3–2 (2005) with 6 Del.Code §§ 17–201, 17–204, 17–206 (2005) (all explaining the execution and filing of a certifi-

While Vodafone has spent a great deal of time emphasizing the point that as the minority partner it does not "control" Cellco's Board of Representatives or a vote thereof, (*see* Pet'rs' Br. at 4–5; Pet'rs' Reply Br. at 9, 15–16, 19; Hr'g Tr. at 5–6, 14–16, 47; Pet'rs' Des'g Evid., App. C at ¶¶ 8–9), that does not mean that it was a "passive investor" in Cellco as a limited partner would be. Vodafone has already acknowledged that, in accordance with its rights as stated in the Cellco Partnership Agreement, it participates in Cellco's management by appointing members to the Board of Representatives. *See infra.* Vodafone has also acknowledged that pursuant to its rights as stated in the Cellco Partnership Agreement, it participated in Cellco's management by appointing Cellco's chief financial officer. (*See* Hr'g Tr. at 41.) Finally, Vodafone has acknowledged that it participates in Cellco's management by holding certain veto rights by which it can block Cellco from taking specifically identified and extraordinary ac-

tions, such as entering into entirely new lines of business, entering a voluntary bankruptcy, or otherwise terminating Cellco's existence.[8] (Pet'rs' Br. at 4–5 (citations omitted); Pet'rs' Reply Br. at 18 (citation omitted); Hr'g Tr. at 15; Pet'rs' Des'g Evid., App. C at ¶ 9 (footnote added).) Consequently, Vodafone's "lack of control" by reason of its minority interest is insufficient to show that it does not participate in the management of Cellco and thus that it was a mere "passive investor" in Cellco.

## CONCLUSION

The income Vodafone received as a partner of Cellco had the character of operational income and was therefore not income in the form of "dividends from investments" under Indiana Code § 6–3–2–2.2(g).[9] Accordingly, Vodafone's motion for summary judgment is hereby DENIED.[10] The Court will schedule a case

cate of limited partnership). "The purpose of the recording requirements is to notify third parties [*i.e.*, creditors] which partners are entitled to the 'special status' of a limited partner." *Kelsey v. Kelsey*, 714 N.E.2d 187, 190–91 (Ind.Ct.App.1999) (citation omitted). There is no evidence before the Court indicating that Cellco complied with the statutory filing requirements for forming a limited partnership.

8. Vodafone points out that pursuant to RULPA, a limited partner can exercise, among other things, certain veto powers similar to these without being seen as "participating in the control of the business" and jeopardizing its limited partnership status. (*See* Pet'rs' Reply Br. at 18–19 *(citing* Ind.Code § 23–16–4–3 (2005); 6 Del.Code § 17–303(b) (2005)).) Thus, Vodafone concludes that "it's clear that [the Cellco] partnership agreement was drafted to intentionally put Vodafone in the position of a limited partner[.]" (Hr'g Tr. at 48.) (*See also* Pet'rs' Reply Br. at 18–19.)

As previously indicated, limited partnerships are creatures of statute that cannot exist based simply on the proclaimed intention of

its partners. *See supra* n. 7. More importantly, however, the fact that Vodafone holds veto rights deemed not to indicate participation in the management of a business does not negate the fact that it participates in Cellco's management by, among other things, appointing members to Cellco's Board of Representatives and significant officers.

9. The Court views the ruling in this case as consistent with its ruling in *Riverboat Development Inc. v. Indiana Department of State Revenue*, 881 N.E.2d 107 (Ind. Tax Ct.2008), as the holding in that case was also formulated by the nature of the business entity of the taxpayer. *See Riverboat Dev., Inc. v. Indiana Dep't of State Revenue*, 881 N.E.2d 107, 108–09 (Ind. Tax Ct.2008) (discussing taxpayer's minority interest in a limited liability company), *review denied.*

10. The Court recognizes that Vodafone has argued that this result violates both the Due Process and Commerce Clauses of the U.S. Constitution. (*See* Pet'rs' Br. at 19–27.) Vodafone's argument, however, is premised on its contention that was a passive investor in

management conference by separate order.[11]

SO ORDERED.

Cellco. (See, e.g., Pet'rs' Br. at 20–24 (claiming that as a passive investor, it did not have the "minimum contacts" required under the Due Process Clause to permit taxation), 25–27 (claiming that as a passive investor, it did not exploit the Indiana marketplace so as to create the "substantial nexus" necessary to permit taxation under the Commerce Clause).) Because the Court has rejected Vodafone's contention that it was a "passive investor" in

Cellco, it need not address the constitutional issue.

11. Vodafone's appeal presented an alternative issue that was not addressed in its summary judgment motion. Because the Court has denied Vodafone's motion for summary judgment, the parties agree that that alternative issue now proceeds to trial. (See Pet'rs' Mot. Summ. J. at 2; Resp't Resp. Br. at 7.)