ATTORNEY FOR PETITIONERS:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**WINSTON LIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT



FILED

Apr 10 2019, 3:10 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

|  |  |
|---|---|
| TONY W. SMITH and SHIRLENA SMITH, | ) ) ) |
| Petitioners, | ) ) ) |
| v. | ) Cause No. 49T10-1605-TA-00013 ) |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) ) ) |
| Respondent. | ) ) |

### ORDER ON PETITIONERS'
### MOTION FOR PARTIAL SUMMARY JUDGMENT

**FOR PUBLICATION**
**April 10, 2019**

WENTWORTH, J.

Tony W. Smith and Shirlena Smith have appealed, among other things, the Indiana Department of State Revenue's assessments of Indiana adjusted gross income tax (AGIT) for 2005 through 2007 and 2009 through 2014. The matter, currently before the Court on the Smiths' Motion for Partial Summary Judgment ("Motion"), presents the following issue of first impression: whether the Department's modifications to the Smiths' AGIT liabilities for 2005 through 2007 (the "years at issue") were limited to the

modifications made by the Internal Revenue Service (the "IRS") to resolve the federal audit for those years.[1] Upon review, the Court finds that the Department's modifications were limited to the final modifications made by the IRS to resolve the federal audit for those years.[2]

**FACTS AND PROCEDURAL HISTORY**

The following facts are not in dispute. The Smiths timely filed their federal income tax returns for 2005 through 2007, reporting that they were professional gamblers with income and deductions associated with that trade. (See Pet'rs' Resp. Opp'n Resp't Mot. Partial Summ. J. ("Pet'rs' Resp. Br.") at 4 (citing First Jt. Stip. Facts ("Stip.") ¶¶ 3-5), Confd'l Ex. A ¶ 5, Confd'l Exs. A-1 to A-3.) The Smiths also filed Indiana nonresident income tax returns for those years. (Pet'rs' Resp. Br. at 4 (citing Stip. ¶¶ 3-5), Confd'l Ex. A ¶ 6, Confd'l Exs. A-4 to A-6.)

The IRS subsequently audited the Smiths' federal income tax returns for the years at issue, examining their status as professional gamblers. (See Resp't Mem. Supp. Mot. Partial Summ. J. ("Resp't Br."), Ex. C at 50; Pet'rs' Resp. Br., Confd'l Ex. B ¶ 7, Confd'l Ex. B-2.) The IRS reported its audit findings to the Smiths by issuing a Revenue Agent Report ("RAR") for 2005 and 2006 on November 19, 2008, and an RAR for 2007 on September 15, 2009. (See Resp't Br., Ex. C at 50, Confd'l Ex. D ¶ 3, Confd'l Ex. D-1 at 1359.) The Smiths' RARs were accompanied by a "30-Day Letter" that provided the time and manner for the Smiths to indicate to the IRS whether they agreed or disagreed with

---

[1] Issues regarding the correctness of all the Department's assessments, however, have been reserved for trial. (See, e.g., Hr'g Tr. at 5.)

[2] The parties have designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

the adjustments. (See Resp't Br. at 6 (citing https://taxclinic.law.gsu.edu/files/2013/IRS_30_day_letter-1.pdf ( "Sample 30-Day Letter")), Ex. C at 58.) The Smiths disagreed with the adjustments on the RARs and initiated an appeal with the IRS. (See Resp't Br., Ex. C at 50-51, 58.)

On January 21, 2011, the IRS executed the Smiths' Form 870-AD "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment," which settled the matter. (See Resp't Br., Ex. C at 51, 54; Pet'rs' Resp. Br., Confd'l Ex. A ¶¶ 11(b), 12(b), Confd'l Ex. A-10.) The settlement reflected adjustments to the Smiths' federal tax liabilities for 2005 through 2007 that were contained on separate tax forms that accompanied the Form 870-AD. (See Pet'rs' Resp. Br., Confd'l Ex. A ¶ 12(c)-(d), Confd'l Exs. A-11 to A-12.)

Several years later, while investigating the Smiths' Indiana AGIT liability for a different tax period, the Department learned of the Smiths' federal audit for the years at issue. (See Resp't Br., Confd'l Ex. D ¶ 3, Confd'l Ex. D-1 at 1359.) The Department expanded its audit to include the years at issue and ultimately adjusted the Smiths' Indiana AGIT liabilities for 2005 through 2007 based on the federal adjustments in the RARs. (See Resp't Br., Confd'l Ex. D ¶ 3, Confd'l Ex. D-1.) On August 8, 2016, the Department issued Proposed Assessments against the Smiths for the years at issue. (Resp't Br., Confd'l Ex. A at 168-73.)

The Smiths, believing that the Department's adjustments should have reflected their Form 870-AD adjustments rather than the adjustments in their RARs, amended their Indiana income tax returns for the years at issue on September 12, 2016. (See Pet'rs' Des'g Evid. Supp. Resp. Opp'n Resp't Mot. Partial Summ. J. ("Pet'rs' Des'g Evid.") ¶ 4,

Stip. ¶¶ 3-4; Pet'rs' Resp. Br., Confd'l Ex. A ¶ 19, Confd'l Ex. B ¶ 15.)  On October 7, 2016, the Smiths protested the Department's Proposed Assessments, and on November 29, 2017, the Department issued a Letter of Findings denying their protest.  (Pet'rs' Des'g Evid. ¶ 4, Stip. ¶¶ 18, 22.)

On January 8, 2018, the Smiths incorporated their claims regarding the years at issue in a pending original tax appeal.[3]  On January 11, 2019, the Smiths moved for partial summary judgment.  On February 20, 2019, the Court held a hearing on the Smiths' Motion.  Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C).  A genuine issue of material fact exists when facts concerning an issue that would dispose of the case are disputed or when undisputed facts support conflicting inferences as to the resolution of an issue.  Popovich v. Indiana Dep't of State Revenue, 52 N.E.3d 73, 76 (Ind. Tax Ct. 2016).

## ANALYSIS

The Smiths contend that they are entitled to partial summary judgment because Indiana Code sections 6-3-4-6 and 6-8.1-5-2 mandate that the Department's modifications to their Indiana AGIT liabilities for the years at issue must be consistent with their Form 870-AD adjustments.  (See Pet'rs' Resp. Br. at 11-21; Hr'g Tr. at 42-43, 57-

---

[3]  On May 10, 2016, the Smiths initiated an original tax appeal that challenged the Department's denial of their 2014 refund claim.  (See Pet'rs' Des'g Evid. Supp. Resp. Opp'n Resp't Mot. Partial Summ. J. ¶ 1, Pet'rs' Am. Pet. Original Tax Appeal, Denied Claim Refund & Final Determination Ind. Dep't State Revenue, & Req. Inj. Collection Tax ¶¶ 14-17.)  The Court subsequently stayed those proceedings for completion of the Department's audit and the resulting administrative appeal proceedings.  (Pet'rs' Resp. Opp'n Resp't Mot. Partial Summ. J. at 2.)

59.) During the relevant period, Indiana Code § 6-3-4-6, which imposed certain duties upon taxpayers, provided that:

> (b) Each taxpayer shall notify the department of any modification of:
>
> > (1) a federal income tax return filed by the taxpayer after January 1, 1978; or
> >
> > (2) the taxpayer's federal income tax liability for a taxable year which begins after December 31, 1977.
>
> The taxpayer shall file the notice on the form prescribed by the department within one hundred twenty (120) days after the modification is made if the modification was made before January 1, 2011, and one hundred eighty (180) days after the modification is made if the modification is made after December 31, 2010.
>
> (c) If the federal modification results in a change in the taxpayer's federal or Indiana adjusted gross income, the taxpayer shall file an Indiana amended return within one hundred twenty (120) days after the modification is made if the modification was made before January 1, 2011, and one hundred eighty (180) days after the modification is made if the modification is made after December 31, 2010.

IND. CODE § 6-3-4-6(b)-(c) (2011) (amended 2015) (emphasis added). In turn, Indiana Code § 6-8.1-5-2, which imposed certain duties upon the Department, provided:

> If a taxpayer's federal income tax liability for a taxable year is modified due to the assessment of a federal deficiency or the filing of an amended federal income tax return, then the date by which the department must issue a proposed assessment under section 1 of this chapter for tax imposed under IC 6-3 is extended to six (6) months after the date on which the notice of modification is filed with the department by the taxpayer.

IND. CODE § 6-8.1-5-2(i) (2011) (amended 2015).

Neither statute defines what constitutes a "federal modification" or when "the modification is made." See generally I.C. §§ 6-3-4-6, -8.1-5-2. Nonetheless, the plain language of each statute indicates that the respective duties of a taxpayer and the

Department arise only after <u>any</u> federal modification is made that "results in a change in the taxpayer's federal or Indiana adjusted gross income" and the "taxpayer's federal income tax liability . . . is modified due to the assessment of a federal deficiency or the filing of an amended income tax return[.]"  <u>See</u> I.C. §§ 6-3-4-6(b), (c), -8.1-5-2(i). Therefore, the plain statutory language requires a federal modification to be the proximate source of the actual change to a federal return or federal tax liability.  In this case, the Court must determine whether the Smiths' Form 870-AD or their RARs constitute the federal modification because it is the proximate source of the change to their federal returns or tax liabilities.

The Department initially claims that the Smiths' RARs constitute their federal modification for purposes of these statutes.  (<u>See</u> Resp't Reply Supp. Partial Summ. J. ("Resp't Reply Br.") at 5-7.)  A federal RAR, however, is never, without more, the proximate source of a change in a taxpayer's federal return, federal tax liability, or state tax liability because additional steps must take place to result in the final federal modification.  (<u>See, e.g.</u>, Resp't Reply Br., Ex. I-1 at Final Order Denying Refund 09-0678R at 5.)  This conclusion is supported by the language in the federal "30-Day Letter," which typically accompanies an RAR, indicating that additional steps will always occur after the RAR is issued based on whether a taxpayer agrees, disagrees, or takes no action with respect to the RAR.  (<u>See</u> Resp't Br. at 6 (citing Sample 30-Day Letter).)  Thus, if a taxpayer challenges adjustments prescribed in an RAR, as here, the RAR cannot constitute a "federal modification" as the term is used  in these Indiana statutes because it would not be the proximate source of the actual changes to the Smiths' federal returns or tax liabilities.

6

The Department argues nonetheless that it has consistently interpreted the term "federal modification" to mean a federal RAR and cites as illustrations several Letters of Findings, Final Orders Denying Refunds, and Audit-grams. (See Resp't Reply Br. at 5-6, Ex. I-1.) The Department asks the Court to defer to its "reasonable interpretation" of this statutory language. (See Resp't Reply Br. at 6-7 (citing Moriarity v. Indiana Dep't of Nat'l Res., 113 N.E.3d 614, 621 (Ind. 2019)).) The Court, however, declines because 1) the Department's evidence provides insufficient authority of a generally applicable interpretation and 2) the Department's interpretation is unreasonable.

First, the Department provides a variety of its own rulings as its authoritative interpretation of a listed tax. The Department cites Letters of Finding as its authority of its generally applicable interpretation, but its own regulation states that a Letter of Finding is not a generally applicable interpretation, but is "based on a particular fact situation which may affect the tax liability of the taxpayer[, and therefore,] only the taxpayer to whom it was issued is entitled to rely on it." 45 IND. ADMIN. CODE 15-3-2(d)(3) (2011). The Department also offers several Final Orders Denying Refund as evidence of its generally applicable interpretation, but they contain express disclaimers that: "The document has no precedential value, is not published in the Indiana Register, and is not intended for further dissemination. Only the taxpayer to whom this final determination is issued may rely on its contents." (See, e.g., Resp't Reply Br., Ex. I-1 at Final Order Denying Refund 02-20080694R at 1.) Accordingly, the Court is not convinced that the Department's evidence indicates its generally applicable interpretation of the term "federal modification," particularly because the Department has not exercised its authority to interpret the term in a duly promulgated regulation as required by statute. See IND. CODE § 6-8.1-3-

7

3(a)(2)(3) (2011).

Second, the Department offers two 1994 Audit-grams as further evidence of its long-held interpretation, (see Resp't Reply Br. at 5-6, Ex. I-1 at Audit-Grams 2-031, 2-032), but even if the Department's evidence were authoritative, the Department's interpretation is not reasonable because it conflicts with the plain language of Indiana Code § 6-3-4-6. The plain language of Indiana Code § 6-3-4-6(c) provides that the federal modification refers to <u>any</u> modification that "results in a change in the taxpayer's federal or Indiana adjusted gross income," a requirement imbued with finality. <u>See</u> I.C. § 6-3-4-6(b), (c). As the Department itself explains in its designated evidence, an RAR is but one of several different documents the IRS uses as a taxpayer proceeds through a variety of available steps to bring finality to a federal audit. (<u>See</u> Resp't Reply Br., Ex. I-1 at Final Order Denying Refund 09-0678R at 5.) Thus, an RAR alone lacks the finality required by Indiana Code § 6-3-4-6(c). If a federal RAR constituted a "federal modification" for purposes of Indiana Code § 6-3-4-6(c), as the Department urges, a taxpayer may have to notify the Department of each sequential federal step on the path to concluding the federal audit, which would result in unnecessary and overly burdensome compliance and administration for both the Department and the taxpayer. <u>See, e.g.</u>, <u>Columbia Sportswear USA Corp. v. Indiana Dep't of State Revenue</u>, 45 N.E.3d 888, 896 (Ind. Tax Ct. 2015) (explaining that the Legislature intends statutes to applied logically to prevent absurd results), <u>review denied</u>. Accordingly, it is unreasonable to interpret that an interlocutory RAR has the necessary finality to comport with the statutory language requiring final changes to trigger a taxpayer's 120- or 180-day time limit.

Determining which federal document provides the finality required under Indiana

Code § 6-3-4-6(c) is a fact sensitive inquiry. Here, the execution of the Form 870-AD proves the Smiths' RARs lack the finality that results in the actual changes to their federal or Indiana adjusted gross income. Moreover, the Smiths have taken no steps to further challenge the Form 870-AD. (See generally Pet'rs' Des'g Evid.; Pet'rs' Resp. Br.; Resp't Br.) Indeed, the parties agree that the Smiths' Form 870-AD reflects the final resolution of their federal audit adjustments for the years at issue. (Compare, e.g., Pet'rs' Resp. Br. at 11-21 with Resp't Reply Br. at 4-7.) Consequently, as a matter of law, the Department's modifications to the Smiths' Indiana AGIT liabilities for the years at issue must be confined to the modifications made by the IRS reflected on the Form 870-AD.

## CONCLUSION

For the above-stated reasons, the Court GRANTS the Smiths' Motion for Partial Summary Judgment. The Court will, by separate order, schedule a case management conference with the parties to discuss pre-trial matters and scheduling.

SO ORDERED this 10th day of April 2019.

_____
Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:
James K. Gilday, Winston Lin