ATTORNEY FOR PETITIONERS:
**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**WINSTON LIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

FILED
Apr 12 2019, 3:26 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| TONY W. SMITH and<br>SHIRLENA SMITH, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1605-TA-00013 |
| | ) | |
| INDIANA DEPARTMENT OF<br>STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON RESPONDENT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**FOR PUBLICATION**
**April 12, 2019**

WENTWORTH, J.

Tony W. Smith and Shirlena Smith have appealed the Indiana Department of State Revenue's assessments of Indiana adjusted gross income tax (AGIT) for 2005 through 2007 and 2009 through 2014. The Smiths also appeal the Department's denial of their refund claim for 2014. The matter, currently before the Court on the Department's Motion for Partial Summary Judgment ("Motion"), questions whether the Department's AGIT assessments for 2005 through 2007 and 2009 through 2011 (the "years at issue") were

timely as a matter of law.[1] Upon review, the Court finds in favor of the Department in part and against it in part.[2]

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. The Smiths, a married couple, are residents of the State of Ohio. (See Resp't Mem. Supp. Mot. Partial Summ. J. ("Resp't Br.") at 5 (citing Pet'rs' Am. Pet. Original Tax Appeal, Denied Claim Refund & Final Determination Ind. Dep't State Revenue, & Req. Inj. Collection Tax ("Pet'rs' Am. Pet.") ¶ 1), Confd'l Ex. E.) During the years at issue, the Smiths visited Indiana to gamble at approximately five different casinos. (See Resp't Br., Ex. B at 19-20, Confd'l Ex. D ¶ 4, Confd'l Ex. D-2 at 233.)

The Smiths timely filed their 2005 through 2007 federal income tax returns, reporting that they were professional gamblers with income and deductions associated with that trade. (See Pet'rs' Resp. Opp'n Resp't Mot. Partial Summ. J. ("Pet'rs' Resp. Br.") at 4 (citing First Jt. Stip. Facts ("Stip.") ¶¶ 3-5), Confd'l Ex. A ¶ 5, Confd'l Exs. A-1 to A-3.) The Smiths also filed Indiana nonresident income tax returns for the 2005 through 2007 tax years. (Pet'rs' Resp. Br. at 4 (citing Stip. ¶¶ 3-5), Confd'l Ex. A ¶ 6, Confd'l Exs. A-4 to A-6.)

At some point in 2008, the Internal Revenue Service (the "IRS") audited the Smiths' 2005 through 2007 federal income tax returns to examine their status as professional

---

[1] Issues regarding the correctness of all the Department's Proposed Assessments and the Smiths' refund claim have been reserved for trial. (See, e.g., Resp't Mem. Supp. Mot. Partial Summ. J. at 5 n.1, 7 n.2, 12 n.3.)

[2] The parties have designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

gamblers.  (See Resp't Br., Ex. C at 50; Pet'rs' Resp. Br., Confd'l Ex. B ¶ 7, Confd'l Ex. B-2.)  The IRS subsequently reported its audit findings to the Smiths by issuing a Revenue Agent Report ("RAR") for 2005 and 2006 on November 19, 2008, and an RAR for 2007 on September 15, 2009.  (See Resp't Br., Confd'l Ex. D ¶ 3, Confd'l Ex. D-1 at 1359.)  The Smiths disagreed with the audit findings reflected in the RARs and, as a result, filed an appeal with the IRS.  (See Resp't Br., Ex. C at 50-51, 58.)  The IRS and the Smiths ultimately settled the matter on January 21, 2011.  (See Resp't Br., Ex. C at 51, 54; Pet'rs' Resp. Br., Confd'l Ex. A ¶¶ 11(b), 12(b).)

In the meantime, the Smiths timely filed their 2009 through 2011 federal income tax returns, which also reported income and deductions associated with their gambling activities.  (See Pet'rs' Resp. Br. at 7 (citing Stip. ¶¶ 6-8); Resp't Br., Confd'l Ex. D ¶ 4, Confd'l Ex. D-2 at 204-17, 233-34.)  Also, the Smiths filed Indiana nonresident income tax returns for those years.  (Pet'rs' Resp. Br. at 7 (citing Stip. ¶¶ 6-8).)

In 2015, the Smiths filed their 2014 nonresident Indiana income tax return requesting a refund of over $300,000.  (See Pet'rs' Des'g Evid. Supp. Resp. Opp'n Resp't Mot. Partial Summ. J. ("Pet'rs' Des'g Evid.") ¶ 2, Pet'rs' Am. Pet. ¶¶ 9-11.)  The Department then opened a desk audit to examine the Smiths' refund claim.  (See Resp't Br., Confd'l Ex. D ¶ 4, Confd'l Ex. D-2 at 264.)  By September of 2015, the Department had expanded the desk audit to include all the years at issue.  (See Resp't Br., Confd'l Ex. D ¶ 4, Confd'l Ex. D-2 at 264.)  On September 26, 2015, the Department issued an Important Taxpayer Notification to the Smiths that granted in part and denied in part their refund claim.  (See Pet'rs' Des'g Evid. ¶ 2, Pet'rs' Am. Pet. at Confd'l Ex. A.)  On May 10, 2016, the Smiths filed an appeal in the Tax Court challenging the Department's denial of

3

their 2014 refund claim.  (See Pet'rs' Des'g Evid. ¶ 1, Pet'rs' Am. Pet. ¶¶ 14-17.)  The Court stayed those proceedings, awaiting the completion of the Department's audit for all the years at issue.  (Pet'rs' Resp. Br. at 2.)

On August 1, 2016, the Department issued its audit report to the Smiths that increased their 2005 through 2007 Indiana AGIT liabilities based on the federal adjustments reflected in the RARs.  (See Resp't Br., Confd'l Ex. D ¶ 3, Confd'l Ex. D-1.)  Then, on August 8, 2016, the Department issued Proposed Assessments against the Smiths for those same tax years.  (Resp't Br., Confd'l Ex. A at 168-73.)  The Smiths, believing the Department's adjustments improper, filed amended Indiana income tax returns for 2005 and 2006 on September 12, 2016.  (See Pet'rs' Des'g Evid. ¶ 4, Stip. ¶¶ 3-4; Pet'rs' Resp. Br., Confd'l Ex. A ¶ 19, Confd'l Ex. B ¶ 15.)  The Smiths also filed an amended Indiana income tax return for 2007 on October 6, 2016.  (Pet'rs' Des'g Evid. ¶ 4, Stip. ¶ 5.)

A few days later, on October 13, 2016, the Department issued a second audit report to the Smiths that indicated, among other things, that they had underreported their Indiana adjusted gross income for 2009 through 2011 by more than 25%.  (See Resp't Br., Confd'l Ex. D ¶ 4, Confd'l Ex. D-2.)  The Department issued Proposed Assessments against the Smiths for those years on October 18, 2016.  (Resp't Br., Confd'l Ex. A at 176-81.)  The Smiths protested the Proposed Assessments for all the years at issue, and the Department denied their protests on November 29, 2017, in two separate Letters of Findings.  (Pet'rs' Des'g Evid. ¶ 4, Stip. ¶¶ 18, 21-23.)

On January 8, 2018, the Smiths incorporated their additional claims regarding all of the Department's Proposed Assessments into their pending original tax appeal.  (See

4

Pet'rs' Des'g Evid. ¶ 2, Pet'rs' Am. Pet.)  On December 4, 2018, the Department moved for partial summary judgment.  On February 20, 2019, the Court held a hearing on the Department's Motion.  Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C).  A genuine issue of material fact exists when facts concerning an issue that would dispose of the case are disputed or when undisputed facts support conflicting inferences as to the resolution of an issue.  Popovich v. Ind. Dep't of State Revenue, 52 N.E.3d 73, 76 (Ind. Tax Ct. 2016).  "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."  T.R. 56(B).

**ANALYSIS**

The Department's Motion asks the Court to find its Proposed Assessments for the years at issue were timely as a matter of law, presenting two separate rationales in support.  First, the Department claims its 2005 through 2007 Proposed Assessments were timely because it was not constrained by a time limitation under Indiana Code § 6-8.1-5-2(f) due to the Smiths' failure to file required returns.  (See Resp't Br. at 9-11.)  Second, the Department claims the 2009 through 2011 Proposed Assessments were timely because they were issued prior to the expiration of the 6-year statutory deadline under Indiana Code § 6-8.1-5-2(b).  (See Resp't Br. at 11-13.)

**The 2005 through 2007 Proposed Assessments**

The Smiths maintain that the Department's Proposed Assessments for 2005 through 2007 were not issued timely because they were issued after the 6-month window prescribed by Indiana Code § 6-8.1-5-2(i):

> If a taxpayer's federal income tax liability for a taxable year is modified due to the assessment of a federal deficiency or the filing of an amended federal income tax return, then the date by which the department must issue a proposed assessment under section 1 of this chapter for tax imposed under IC 6-3 is extended to six (6) months after the date on which the notice of modification is filed with the department by the taxpayer.

(See Pet'rs' Resp. Br. at 22-23; Hr'g Tr. at 34.) See also IND. CODE § 6-8.1-5-2(i) (2011) (amended 2015). The Smiths explain that they notified the Department both verbally and in writing of the resolution of the IRS's audit in August of 2015, and accordingly the Department was required to issue the Proposed Assessments within 6-months after receiving that notification. (See Pet'rs' Resp. Br. at 23, Pet'rs' Confd'l Ex. B ¶¶ 10-11.) Consequently, the Smiths assert that because the Department did not issue the Proposed Assessments within the 6-month window, they were untimely.[3] (See Pet'rs' Resp. Br. at 23.)

The Department, however, seeks judgment as matter of law that these Proposed Assessments were timely because there was no time limitation pursuant to Indiana Code § 6-8.1-5-2 in light of Indiana Code § 6-3-4-6. (See Resp't Br. at 9-11.) Indiana Code § 6-3-4-6 provides:

---

[3] Although the Smiths written brief contains alternative arguments with respect to this issue, the Court will not address them because they concern either the Smiths' own motion partial for summary judgment or are not dispositive. (See Pet'rs' Resp. Opp'n Resp't Mot. Partial Summ. J. ("Pet'rs' Resp. Br.") at 11-22.) See also, e.g., Smith v. Indiana Dep't of State Revenue, Case No. 49T10-1605-TA-00013, slip op. (Ind. Tax Ct. Apr. 10, 2019) (order granting the Smiths' motion for partial summary judgment).

Each taxpayer shall notify the department of any modification of:

> (1) a federal income tax return filed by the taxpayer after January 1, 1978; or

> (2) the taxpayer's federal income tax liability for a taxable year which begins after December 31, 1977.

> The taxpayer shall file the notice on the form prescribed by the department within one hundred twenty (120) days after the modification is made if the modification was made before January 1, 2011, and one hundred eighty (180) days after the modification is made if the modification is made after December 31, 2010.

IND. CODE § 6-3-4-6(b) (2011) (amended 2015). See also 45 IND. ADMIN. CODE 3.1-1-94 (2011) (designating that individual taxpayers, like the Smiths, must use a Form IT-40X, Indiana Amended Income Tax Return, to notify the Department of the federal modification).

Here, the designated evidence shows that the IRS issued an RAR on November 19, 2008, issued another RAR on September 15, 2009, and settled the Smiths' appeal of the federal audit associated with those RARs on January 21, 2011. Accordingly, the latest date by which a final federal modification could have occurred was January 21, 2011, which would have required the Smiths to file Indiana amended tax returns for 2005 through 2007 within 180 days after that date. See generally Smith v. Indiana Dep't of State Revenue, Case No. 49T10-1605-TA-00013, slip op. (Ind. Tax Ct. Apr. 10, 2019) (regarding when a final federal modification occurs). The Smiths, however, did not file their Indiana amended returns until over five years later in September and October of 2016. Therefore, the Smiths' failure to file the required returns invoked Indiana Code § 6-8.1-5-2(f): "[I]f a person does not file a return, there is no time limit within which the department must issue its proposed assessment." I.C. § 6-8.1-5-2(f). Consequently, the

Department's Proposed Assessments for 2005 through 2007, issued to the Smiths on August 8, 2016, were timely.

**The 2009 through 2011 Proposed Assessments**

Next, the Department claims that its 2009 through 2011 Proposed Assessments were timely as a matter of law because the Smiths understated their Indiana adjusted gross income ("AGI") by more than 25% for those years, activating the statute of limitations under Indiana Code § 6-8.1-5-2(b) ("Section 2(b)"). (See Resp't Br. at 11-13; Hr'g Tr. at 11-12.) During the 2009 through 2011 tax years, Section 2(b) provided:

> If a person files a utility receipts tax return (IC 6-2.3), an adjusted gross income tax (IC 6-3), supplemental net income tax (IC 6-3-8) (repealed), county adjusted gross income tax (IC 6-3.5-1.1), county option income tax (IC 6.3-5-6), or financial institutions tax (IC 6-5.5) return that understates the person's income, as that term is defined in the particular income tax law, by at least twenty-five percent (25%), the proposed assessment limitation is six (6) years instead of the three (3) years provided in subsection (a).

I.C. § 6-8.1-5-2(b).

On the other hand, the Smiths claim the 6-year statute of limitations under Section 2(b) does not apply because the plain meaning of the phrase "understates the person's income" refers to gross income, not AGI. (See Pet'rs' Resp. Br. at 23-31; Hr'g Tr. at 23-24.) The Smiths explain that the parties agree that the Smiths did not understate their gross income by more than 25%; therefore, they assert that the Department's Proposed Assessments for 2009 through 2011 were untimely.[4] (See Pet'rs' Resp. Br. at 29, Ex. C.) The Smiths' argument, however, is not persuasive.

The 6-year statute of limitations under Section 2(b) is triggered when a taxpayer

---

[4] While the Smiths provided other arguments with respect to this issue, the Court will not address them because they are not relevant to the disposition of this issue. (See Pet'rs' Resp. Br. at 23-24, 30-31.)

8

understates by more than 25% its "income" computed under any of the six enumerated income tax schemes.  See I.C. § 6-8.1-5-2(b).  Rather than specifically define the word "income" for each of them, the General Assembly expressly incorporated the applicable definitions of "income" by using the phrase "as that term is defined in the particular income tax law[.]"  I.C. § 6-8.1-5-2(b).

The AGIT statutory scheme does not define "income," but separately defines "gross income" and "adjusted gross income."  See IND. CODE § 6-3-1-8 (2009) (defining "gross income"); IND. CODE § 6-3-1-3.5 (2009) (defining "adjusted gross income) (amended 2011).  After the repeal of Indiana's gross income tax in 2003, (see P.L. 192-2002(ss), § 191 (repealing Indiana Code § 6-2.1-1 et seq. as of Jan. 1, 2003)), the term "gross income" appears very infrequently in the AGIT Act.  See, e.g., IND. CODE § 6-8.1-6-5 (2019) (providing that gross income is used to determine the source of income for purposes of the AGIT).  Therefore, uses of the term "gross income" within the AGIT Act simply are subordinate to the term AGI.  See, e.g., I.C. § 6-8.1-6-5.  Accordingly, the AGIT statutory scheme generally refers to the term "income" as AGI.

As used in Section 2(b), the term "income" necessarily means AGI because, as a tax imposition section, it authorizes the Department to impose tax on AGI, not gross income, beyond the usual 3-year time limitation in Indiana Code § 6-8.1-5-2(a).  See I.C. § 6-8.1-5-2(a).  Thus, the focus is on whether the taxpayer understated its AGI that is subject to tax, not its gross income that has not been taxed in Indiana since 2003.  In addition, the Department's regulation defines "income" for purposes of Section 2(b) as AGI.  See 45 IND. ADMIN. CODE 15-5-7(e) (2009).

The designated evidence shows that the Smiths filed their Indiana income tax

9

return for 2009 on September 1, 2010, and their 2010 and 2011 returns in 2011 and 2012. (See Pet'rs' Des'g Evid., Stip. ¶¶ 6-8.) After auditing those years, the Department determined that the Smiths were not engaged in the business of professional gambling, and that they could not deduct their gambling expenditures, which substantially increased their AGI for those years. (See generally, e.g., Resp't Br., Confd'l Ex. D-2.) The Department, therefore, had a reasonable belief that the Smiths understated their AGI by more than 25% for those years. (See generally, e.g., Resp't Br., Confd'l Ex. D-2.) Accordingly, the Department had until September 1, 2016, to issue a proposed assessment for the 2009 tax year, until 2017 for the 2010 tax year, and until 2018 for the 2011 tax year. See also I.C. § 6-8.1-5-2(b). Because the Department issued its Proposed Assessments for those years on October 18, 2016, the Proposed Assessment for 2009 was untimely but the Proposed Assessments for 2010 and 2011 were not. Consequently, the Court finds in favor of the Smiths with respect to the 2009 Proposed Assessment and in favor of the Department with respect to the 2010 and 2011 Proposed Assessments.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Department's Motion with respect to its Proposed Assessments for 2005 through 2007 and 2010 through 2011 and GRANTS summary judgment to the Smiths with respect to the Proposed Assessment for 2009. The Court will, by separate order, schedule a case management conference with the parties to discuss pre-trial matters and scheduling.

SO ORDERED this 12th day of April 2019.

Martha Blood Wentworth, Judge
Indiana Tax Court

10

DISTRIBUTION:
James K. Gilday, Winston Lin