ATTORNEYS FOR PETITIONER:
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

_____

# IN THE
# INDIANA TAX COURT

**FILED**
Dec 18 2015, 3:21 pm
**CLERK**
of the supreme court,
court of appeals and
tax court

_____

| | | |
|---|---|---|
| COLUMBIA SPORTSWEAR USA CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1104-TA-00032 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

_____

### ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

_____

**FOR PUBLICATION**
**December 18, 2015**

WENTWORTH, J.

Columbia Sportswear USA Corporation challenges the Indiana Department of State Revenue's assessment of adjusted gross income tax (AGIT) for the 2005, 2006, and 2007 tax years (the "years at issue"). The matter is currently before the Court on the parties' cross-motions for summary judgment.[1] The dispositive issue is whether the Department's adjustments to Columbia Sportswear's net income for each of the years at

_____

[1] The parties have designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

issue were proper.[2]  The Court finds that they were not.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute.  Columbia Sportswear, an Oregon corporation, was formed in October of 2003 to sell and distribute throughout the United States, including Indiana, the sporting/hiking apparel, footwear, and related accessories/equipment (collectively, "Products") of its parent, Columbia Sportswear Company, Inc. (CSC), and its affiliate, Mountain Hardwear, Inc.   (See Second Stipulation of Facts ("Second Stip.") ¶¶ 3-12; Pet'r Des'g Evid., App. E at 661 ¶¶ 32-34.) CSC engaged an independent accounting firm to conduct a Transfer Pricing Study to determine arm's-length pricing for its and Mountain Hardwear's 2005, 2006, and 2007 sales of the Products to Columbia Sportswear (the "Intercompany Transactions").  (See Second Stip. ¶ 16, Exs. 19-21; Pet'r Des'g Evid., App. F at 879-80 ¶¶ 27, 29.)

During each of the years at issue, Columbia Sportswear filed an Indiana corporate AGIT return on a separate company basis reporting that it was entitled to an overpayment credit.  (See First Stipulation of Facts ("First Stip.") ¶ 1, Exs. 2-4).  In August 2008, Columbia Sportswear filed two amended returns that requested a refund of AGIT paid for the 2005 and 2006 tax years only.  (See First Stip. ¶ 2, Exs. 6-7.)  The Department subsequently audited Columbia Sportswear and determined that it needed to adjust Columbia Sportswear's net income pursuant to Indiana Code § 6-3-2-2(l)(4) and Indiana Code § 6-3-2-2(m) because the Intercompany Transactions had distorted

---

[2]  The Department's motion for summary judgment presented two other issues:  1) whether the Department's denial of Columbia Sportswear's refund claims was proper; and 2) whether the Department's assessments violated P.L. 86-272.  (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 1, 5-12.)  Columbia Sportswear has conceded that the Department's actions were proper with respect to both of these issues.  (See Pet'r Br. Opp'n Resp't Mot. Summ. J. ("Pet'r Br.") at 1-2.)

2

Columbia Sportswear's Indiana source income. (See First Stip. ¶¶ 3-4, Ex. 8 at 7-10.) On September 24, 2010, the Department issued Proposed Assessments for the years at issue to Columbia Sportswear, assessing it with an additional $948,369.69 in AGIT, penalties, and interest. (See First Stip. ¶¶ 5-6, Exs. 9-11.) Columbia Sportswear protested, and after conducting a hearing, the Department issued its final determination upholding the assessments of additional AGIT and interest only. (See First Stip. ¶¶ 7-8, Exs. 12-13.)

On April 28, 2011, Columbia Sportswear initiated an original tax appeal. On March 5, 2013, the Department filed its motion for summary judgment and designated, among other things, the Proposed Assessments as evidence. On April 22, 2013, Columbia Sportswear filed a cross-motion for summary judgment. The Court held a hearing on the parties' motions on July 31, 2013. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When the Department moves for summary judgment, it may make a prima facie case that there is no genuine issue of material fact regarding the validity of an unpaid tax by properly designating its proposed assessments as evidence. Indiana Dep't of State Revenue v. Rent-A-Center E., Inc. (RAC II), 963 N.E.2d 463, 466-67 (Ind. 2012). "The burden then shifts to the taxpayer to come forward with sufficient evidence demonstrating that there is, in actuality, a genuine issue of material fact with respect to the unpaid tax[.]" Id. at 467.

3

## LAW

Each corporate taxpayer with Indiana adjusted gross income derived from sources within Indiana is required to report its AGIT liability on a separate company basis. IND. CODE § 6-3-2-1(b) (2005) (amended 2011); see also Kohl's Dep't Stores, Inc. v. Indiana Dep't of State Revenue, 822 N.E.2d 297, 301 (Ind. Tax Ct. 2005). The computation of this liability "begins with federal taxable income, to which [the] taxpayer makes expressly enumerated adjustments under Indiana Code § 6-3-1-3.5(b)[.]" Indiana Dep't of State Revenue v. Caterpillar, Inc., 15 N.E.3d 579, 581 (Ind. 2014).

Upon determining its Indiana tax base in this manner, a taxpayer doing business in more than one state must next determine what portion of its adjusted gross income is derived from sources within Indiana. See I.C. § 6-3-2-1(b). This determination requires the taxpayer to apply the applicable allocation and apportionment rules set forth in Indiana Code § 6-3-2-2(a)-(k) (the "Standard Sourcing Rules"). See IND. CODE § 6-3-2-2(a)-(k) (2005) (amended 2006). See also RAC II, 963 N.E.2d at 465. The Standard Sourcing Rules provide that a taxpayer's "business income is apportioned between Indiana and other states using a three-factor formula,[3] while [its] nonbusiness income is allocated to Indiana or another state." See May Dep't Stores Co. v. Indiana Dep't of State Revenue, 749 N.E.2d 651, 656 (Ind. Tax Ct. 2001) (footnote added and footnotes omitted). See also I.C. § 6-3-2-2(b)-(k).

In the event that the Department determines, as it has here, that the use of the Standard Sourcing Rules does not fairly reflect the taxpayer's Indiana source income, it

---

[3] Indiana's standard three-factor apportionment formula takes a corporate taxpayer's business income from both within and without the state and multiplies that figure by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three. See Hunt Corp. v. Dep't of State Revenue, 709 N.E.2d 766, 771 (Ind. Tax Ct. 1999); IND. CODE § 6-3-2-2(b)-(e) (2005) (amended 2006).

may apply one of the alternative allocation and apportionment methods under Indiana Code § 6-3-2-2(l) through (p) (the "Alternative Apportionment Rules"). See I.C. § 6-3-2-2(l)-(p). The Department will, however, only

> depart from use of the standard [sourcing] formula [] if the use of such formula works a hardship or injustice upon the taxpayer, results in an arbitrary division of income, or in other respects does not fairly attribute income to this state or other states. It is anticipated that these situations will arise only in limited and unusual circumstances (which ordinarily will be unique and nonrecurring) when the standard apportionment provisions produce incongruous results.

45 IND. ADMIN. CODE 3.1-1-62 (2005). See also Twentieth Century-Fox Film Corp. v. Dep't of Revenue, 700 P.2d 1035, 1039 (Or. 1985) (stating that "some alternative method must be available to handle the constitutional problem[s] as well as the unusual cases" (citing William J. Pierce, The Uniform Division of Income for State Tax Purposes, 35 Taxes 747, 781 (1957))).

## ANALYSIS

Columbia Sportswear, in response to the Department's prima facie case that its assessments are correct, contends that the Department's adjustments were improper because neither Indiana Code § 6-3-2-2(l)(4) nor Indiana Code § 6-3-2-2(m) authorized the Department to increase its net income tax base for purposes of assessing Indiana AGIT.[4] (See Pet'r Br. Opp'n Resp't Mot. Summ. J. ("Pet'r Br.") at 6-16.) The

---

[4] The Department has asserted that the Court need not address Columbia Sportswear's claim that the Department lacked the authority to adjust its net income because a taxpayer can defeat the Department's prima facie case only by designating evidence that demonstrates a genuine issue of material fact. (See Hr'g Tr. at 14-22.) This assertion is incorrect because Trial Rule 56(C) and cases interpreting that Rule state that a claim for summary judgment may also be defeated when the undisputed material facts fail to establish that a litigant is entitled to judgment as a matter of law. See, e.g., Mayhue v. Sparkman, 653 N.E.2d 1384, 1386 (Ind. 1995) (stating that "[w]here there is no genuine issue of material fact, we will only affirm a denial of summary judgment if we find that the moving party is not entitled to judgment as a matter of law").

5

Department, on the other hand, claims that both subsections of the statute authorized its adjustments to Columbia Sportswear's net income.[5] (See, e.g., Resp't Reply Pet'r Resp. Br. ("Resp't Reply Br.") at 8-9; Hr'g Tr. at 34-37.)

### Indiana Code § 6-3-2-2(I)(4)

The undisputed material facts establish that the Department sought to "adjust the business income [of Columbia Sportswear that would] be apportioned to Indiana . . . [to] give a more realistic view of the income and expense figures of the entire [consolidated] group[.]" (First Stip., Ex. 8 at 9.) The Department's adjustments consisted of the following steps:

1) Determining the average net profit ratio of the federal consolidated group for each of the years at issue by dividing the group's gross receipts by its net income;

2) Recalculating Columbia Sportswear's net income for each of the years at issue by multiplying Columbia Sportswear's gross receipts by the Step 1 ratios; and then,

3) Ascertaining the additional amount of Columbia Sportswear's net income to be attributed to Indiana for each of the years at issue by subtracting Columbia Sportswear's federal taxable income as reported on each year's Pro Forma from the applicable amount in Step 2.

(See First Stip., Ex. 8 at 6-9.) Thereafter, the Department did not recalculate Columbia Sportswear's apportionment percentage, but instead, applied the original apportionment percentage from its Indiana AGIT returns to the applicable Step 3 amount. (Compare First Stip., Ex. 2 at 1, line 15(d), Ex. 3 at 1, line 15(d), and Ex. 4 at 1, line 15(d) with Ex.

---

[5] The Department has asked the Court to remand this matter so that it may require Columbia Sportswear to file a combined income tax return under Indiana Code § 6-3-2-2(p) as the alternative method. (See Hr'g Tr. at 5-8.) During the audit, however, the Department found that method inapplicable, concluding that an adjustment to Columbia Sportswear's net income would correct the alleged distortion. (See First Stipulation of Facts ("First Stip."), Ex. 8 at 8.) Accordingly, the Court declines to provide the Department with the opportunity to take a second bite of the proverbial apple.

6

8 at 12-14.)

The Department maintains that Indiana Code § 6-3-2-2(l)(4) authorized its adjustments because it merely "allocated" back the sales that Columbia Sportswear improperly sent away from Indiana to ensure that the Department had "an accurate starting point" for determining Columbia Sportswear's AGIT liability. (See Hr'g Tr. at 28-29.) The Department's use of the word "allocated," however, simply refers to the word's ordinary meaning to distribute or attribute, not to its technical meaning under Indiana Code § 6-3-2-2(l)(4) to divide a taxpayer's tax base among the states in which it does business. Compare WEBSTER'S THIRD NEW INT'L DICTIONARY 57 (2002 ed.) (defining "allocate" as "to give (a share of money, land, or responsibility) to a person") with Hunt Corp. v. Dep't of State Revenue, 709 N.E.2d 766, 772 n.15 (Ind. Tax Ct. 1999) (defining the concepts of allocation and apportionment of the tax base under Indiana Code § 6-3-2-2(l)) and IND. CODE § 1-1-4-1(1) (2005) (providing that "[t]echnical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import").

During the years at issue, Indiana Code § 6-3-2-2(l)(4) provided that:

> If the allocation and apportionment provisions of this article do not fairly represent the taxpayer's income derived from sources within the state of Indiana, . . . the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable . . . the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

I.C. § 6-3-2-2(l)(4). "When income is allocated, it is deemed to come in its entirety from a particular state, thereby making that income taxable by only one state." Hunt, 709 N.E.2d at 772, n.15. "When income is apportioned, it is divided for tax purposes among the various states in which the taxpayer receives such income." Id. (citation omitted).

Thus, the concepts of allocation and apportionment under Indiana Code § 6-3-2-2(l)(4) involve the division of the tax base among the states, not the computation of the tax base itself.

The Uniform Division of Income for Tax Purposes Act ("UDITPA) supports this conclusion.  UDITPA was drafted in the mid-1950s to "'promote uniformity in allocation practices among the states that impose tax on or measured by the net income of a corporation.'"  May, 749 N.E.2d at 656-57.  As such, Professor William J. Pierce, UDITPA's principal drafter, has explained that this uniform rule "assumes that the existing state legislation has defined the base of the tax and[, thus,] the only remaining problem is the amount of the base that should be assigned to the particular taxing jurisdiction."  (Pet'r Des'g Evid., Ex. H at 1015-16 (emphasis omitted).)  Thus, UDITPA "does not deal with the problem of ascertaining the items used in computing income or the allowable items of expense."  (Pet'r Des'g Evid., Ex. H at 1015-16.)

Indiana has not formally adopted UDITPA.  May, 749 N.E.2d at 656. Nevertheless, the allocation and apportionment provisions of Indiana Code § 6-3-2-2 generally follow the provisions of UDITPA, which the Department's regulations expressly recognize. See 45 IND. ADMIN. CODE 3.1-1-37 (2005).  In fact, Indiana Code § 6-3-2-2(l) uses nearly the same language as Section 18 of UDITPA.  Compare, e.g., I.C. § 6-3-2-2(l) with (Pet'r Des'g Evid., Ex. H at 1015.)  Specifically, Indiana Code § 6-3-2-2(l) provides:

> If the allocation and apportionment provisions of [Article 3] do not fairly reflect the taxpayer's income derived from sources within the state of Indiana, the taxpayer may petition for or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

8

> (1) separate accounting;
>
> (2) the exclusion of any one (1) or more of the factors;
>
> (3) the inclusion of one (1) or more additional factors which will fairly represent the taxpayer's income derived from sources within the state of Indiana; or
>
> (4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

I.C. § 6-3-2-2(l).  By comparison, Section 18 of UDITPA provides:

> If the allocation and apportionment provisions of this Act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the [tax administrator] may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
>
> (1) Separate accounting;
>
> (2) The exclusion of any one or more of the factors;
>
> (3) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or
>
> (4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

(Pet'r Des'g Evid., Ex. H at 1015.)  Accordingly, the plain language of Indiana Code § 6-3-2-2(l), like that of Section 18 of UDITPA, "deals only with the question of the fairness of the [allocation or apportionment] of income, not with the determination of the tax base itself."  (See Pet'r Des'g Evid., Ex. H at 1015.)

Finally, the method by which a corporate taxpayer computes its Indiana AGIT liability also supports the conclusion that the concepts of allocation and apportionment under Indiana Code § 6-3-2-2(l)(4) solely involve dividing the tax base among the

9

states, not computing the tax base. As stated above, Indiana's AGIT liability calculation begins with federal taxable income ("FTI"): specifically, a corporate taxpayer first transfers the amount of its FTI from line 28 of its federal income tax return (Form 1120) to the state tax return (IT-20) as the starting point for its Indiana liability calculation. See IND. CODE § 6-3-1-3.5(b) (2005) (amended 2006). (Compare also, e.g., First Stip., Ex. 2 at 13 (Columbia Sportswear's Federal Pro Forma)[6] with Ex. 2 at 11 (Columbia Sportswear's 2005 Indiana AGIT return).) The taxpayer then adjusts this starting point by making the applicable statutorily prescribed modifications to its FTI. See I.C. § 6-3-1-3.5(b). (See also, e.g., First Stip., Ex. 2 at 1.) Only then can the taxpayer divide its Indiana net income tax base by applying the Standard Sourcing Rules. See I.C. § 6-3-2-2(b)-(k). (See also, e.g., First Stip., Ex. 2 at 1, lines 15-18.) Accordingly, the allocation and apportionment provisions under Indiana Code § 6-3-2-2(l) are distinct from the provisions that determine the Indiana tax base under Indiana Code § 6-3-1-3.5(b). Therefore, to conclude that Indiana Code § 6-3-2-2(l) authorizes the Department to make changes outside the context of allocation and apportionment would be like trying to pound a square peg into a round hole. See Uniden Am. Corp. v. Indiana Dep't of State Revenue, 718 N.E.2d 821, 828 (Ind. Tax Ct. 1999) (stating that the Legislature

---

[6] CSC filed federal consolidated income tax returns during each of the years at issue that reported the income and losses of CSC, Mountain Hardwear, Columbia Sportswear, and three other corporate affiliates as if they were one entity. (See, e.g., First Stip., Ex. 2 at 2-3, Ex. at 8 at 3-4.) See also American Standard, Inc. v. U.S., 602 F.2d 256, 261 (Ct. Cl. 1979) (explaining that the purpose of consolidated filing "is to permit affiliated corporations, which may be separately incorporated for various business reasons, to be treated as a single entity for income tax purposes as if they were, in fact, one corporation"). For state tax reporting purposes, CSC prepared a federal Pro Forma income tax return to report income and losses on a separate company basis for each affiliate during the years at issue. See 26 C.F.R. § 1.1502-11(a) (2005) (requiring each member of the consolidated group to calculate its taxable income separately). While the Department has urged the Court to disregard Columbia Sportswear's federal Pro Formas, claiming that they contain "made-up" numbers, (see, e.g., Hr'g Tr. at 4-5), it has not designated any evidence to support its claim or explained how the numbers are improper. Accordingly, the Court will not address this argument.

10

intends statutes to be applied logically to prevent absurd results).

The effect of each of the Department's audit adjustments was to increase Columbia Sportswear's Indiana net income tax base by approximately $100,000,000 for each of the years at issue,[7] not to divide its tax base differently than Columbia Sportswear had done under the Standard Sourcing Rules. (See First Stip., Ex. 8 at 12-14.) Indiana Code § 6-3-2-2(l)(4) authorized the Department to use reasonable alternative methods to those provided under the Standard Sourcing Rules only for dividing the tax base. Therefore, Indiana Code § 6-3-2-2(l)(4) did not authorize the Department to make adjustments that increased Columbia Sportswear's FTI and, thus, its Indiana net income tax base. Accordingly, the Department is not entitled to summary judgment on this basis.

### Indiana Code § 6-3-2-2(m)

During the years at issue, Indiana Code 6-3-2-2(m) provided that:

> In the case of two (2) or more organizations, trades, or businesses owned or controlled directly or indirectly by the same interests, the department shall distribute, apportion, or allocate the income derived from sources within the state of Indiana between and among those organizations, trades, or businesses in order to fairly reflect and report the income derived from sources within the state of Indiana by various taxpayers.

I.C. § 6-3-2-2(m). This language is nearly identical to the language of IRC § 482, indicating that both have a similar purpose. See, e.g., Rent-A-Center E., Inc. v. Indiana Dep't of State Revenue (RAC III), No. 49T10-0612-TA-00106, 2015 WL 5269719, at *5-6 (Ind. Tax Ct. Sept. 10, 2015), petition for review filed. The purpose of IRC § 482, and accordingly Indiana Code § 6-3-2-2(m), is "to ensure that taxpayers clearly reflect

---

[7] For example, the Department's adjustment to Columbia Sportswear's net income for the 2005 tax year increased its Indiana tax base from $8,572,365.00 to $107,848,438.00. (See First Stip., Ex. 2 at 11, Ex. 8 at 12.)

11

income attributable to controlled transactions and to prevent the avoidance of taxes with respect to such transactions." See 26 C.F.R. § 1.482-1(a)(1) (2015). A transfer pricing study done in accordance with IRC § 482 and its associated regulations provides evidence of a range of pricing for intercompany transactions between related entities that is similar to the pricing of comparable transactions between unrelated third parties (i.e., arm's-length pricing). See generally, e.g., 26 C.F.R. § 1-1482-1; 26 C.F.R. § 1.482-3 (2015). This arm's-length standard is relevant for evaluating whether intercompany transactions are inappropriate tax avoidance mechanisms that distort the true generation of income in various jurisdictions for both federal and state tax purposes. See, e.g., RAC III, No. 49T10-0612-TA-00106, 2015 WL 5269719, at *4-7. In fact, Indiana's Legislature has acknowledged the value of this arm's-length standard by expressly incorporating IRC § 482 and its associated regulations as a safe harbor from having to add back certain intercompany intangible expenses when computing an Indiana AGIT liability. See generally IND. CODE § 6-3-2-20 (2006) (amended 2007).

If the Standard Sourcing Rules do not fairly reflect a taxpayer's Indiana source income, Indiana Code § 6-3-2-2(m) authorizes the Department to adjust intercompany expense deductions that reduce a taxpayer's Indiana tax base, such as deductions for the costs of goods sold to an affiliate. See I.C. § 6-3-2-2(m). The Department claims, therefore, that its adjustments to Columbia Sportswear's net income tax base were authorized by Indiana Code § 6-3-2-2(m). (See, e.g., Resp't Reply Br. at 8.) Indeed, the Department maintains that Columbia Sportswear's state tax treatment of its Intercompany Transactions improperly "reduced [its] profit by almost two-thirds" because CSC and Mountain Hardwear purchased the Products from independent

12

foreign manufacturers and then resold them to Columbia Sportswear "at an inflated price[.]" (See Resp't Reply Br. at 2; First Stip., Ex. 8 at 7.) The Department points out that Columbia Sportswear's net income must be distorted because the consolidated group's effective tax rate decreased from 33.6% in 2006 to 30.6% in 2007 despite the fact that its net sales increased by at least 5% during each of the years at issue, its gross profit increased from 42.0% in 2006 to 42.8% in 2007, and its net income increased from $123.0 million in 2006 to $144.5 million in 2007. (See Resp't Br. at 2 (citing Resp't Des'g Evid., Exs. B at 25, C at 25, Ex. D at 25-26).)

Columbia Sportswear, in response, presented three Transfer Pricing Studies as evidence that its Intercompany Transactions were conducted at arm's-length rates and, therefore, its Indiana source income was fairly reflected under the Standard Sourcing Rules. (See Pet'r Br. at 17, 21-22, 30-32; Second Stip., Exs. 19-21.) Columbia Sportswear also maintains that its Indiana source income was fairly reflected because "[m]ost of the value inherent in the Products [was] derived from [CSC and Mountain Hardwear's out-of-state] research, design, sourcing, manufacturing, and advertising activities[,]" and not derived from Columbia Sportswear's in-state distribution and sale activities as evidenced by, among other things, the Transfer Pricing Studies. (See Pet'r Br. at 26-29 (citing Pet'r Des'g Evid., App. E at 657 ¶ 11, 662-69 ¶¶ 37-42, 45-46, 48-56, App. F. at 876-77 ¶¶ 14-16).)

The Department counters, however, that these Transfer Pricing Studies do not rebut its prima facie case that its assessments are correct because:

> 1) Indiana has neither adopted nor enacted a statute similar to IRC § 482 or its related regulations;
>
> 2) the purposes of IRC § 482, (i.e., "combat[ing] off-shore tax

13

evasion by multi-national corporations") are entirely different from those of Indiana Code § 6-3-2-2(m); and

> 3) the Transfer Pricing Studies contain a disclaimer, stating that they "do not reach any conclusions regarding state tax issues."

(See Resp't Reply Br. at 5-6 (citing Pet'r Des'g Evid., App. D, Ex. 19 at 331); Hr'g Tr. at 90-92.) The Department's arguments fail for the following two reasons.

First, the Court has recently addressed the Department's first two arguments and found them unpersuasive. See RAC III, No. 49T10-0612-TA-00106, 2015 WL 5269719, at *5-7. The Court will not restate its RAC III rationale here, but incorporates it by reference. See id.

Second, the disclaimers in Columbia Sportswear's Transfer Pricing Studies state:

> This report is limited to issues concerning compliance for the specified transaction(s) with [IRC § 482]. Additional issues may exist that could affect the U.S. or foreign tax treatment of the transaction(s) that are the subject of this report and our report does not consider or provide a conclusion with respect to any additional issues. With respect to any significant tax issues outside the limited scope of this submission, the submission is not intended by [the accounting firm] to be used by any person for the purposes or advice or avoiding any penalties that may be imposed on any taxpayer.

(See, e.g., Pet'r Des'g Evid., App. D, Ex. 19 at 331.) Both the above language in the Transfer Pricing Studies and the affidavit of the economist that prepared them indicate that this standard disclaimer is provided to "limit [the accounting firm's] professional responsibility to only the question of whether . . . the purchase price paid between related entities satisfies the requirements of [IRC § 482]." (See Pet'r Des'g Evid., App. G at 966-67 ¶¶ 27, 30.) Therefore, the Court is not persuaded that the disclaimers render the Transfer Pricing Studies irrelevant to the issue of whether Columbia Sportswear's income is fairly reflected under the Standard Sourcing Rules.

14

In this case, the Department's Trial Rule 30(B)(6) witness testified that the Department did "not take exception to" the comparable profits method that was utilized in the Transfer Pricing Studies because that method is "generally accepted . . . [by] everybody." (See Pet'r Des'g Evid., App. H, Ex. 46 at 1009-10.) The Department has neither subsequently alleged nor provided designated evidence to show that Columbia Sportswear's Transfer Pricing Studies are invalid or unreliable because they failed to comply with IRC § 482 and its related regulations. (See generally Resp't Br.; Resp't Reply Br.; Hr'g Tr.) Rather, the Department merely alleged that the Standard Sourcing Rules must have distorted Columbia Sportswear's Indiana source income because of the "big variance" between the percentages of gross profit for the consolidated group in comparison to Columbia Sportswear. (See First Stip., Ex. 8 at 6-7; Pet'r Des'g Evid., App. H, Ex. 45 at 1004-05.) (See also Hr'g Tr. at 23-24 (where the Department states the determination of whether a taxpayer's Indiana source income is distorted involves "something of a common sense test[ or] a gut feeling approach").) The Department's allegation, however, is insufficient to entitle it to judgment as a matter of law. See C & C Oil Co. v. Indiana Dep't of State Revenue, 570 N.E.2d 1376, 1379-80 (Ind. Tax Ct. 1991) (providing that while suppositional musings create hypotheticals, hypotheticals do not create genuine issues of material fact); Herb v. State Bd. of Tax Comm'rs, 656 N.E.2d 890, 893 (Ind. Tax Ct. 1995) (stating that "[a]llegations, unsupported by factual evidence, remain mere allegations"). The designated evidence establishes that Columbia Sportswear's Intercompany Transactions were conducted at arm's length-rates and, therefore, the Standard Sourcing Rules fairly reflected Columbia Sportswear's Indiana source income for purposes of Indiana Code § 6-3-2-2(m).

15

Accordingly, the Department was not authorized to make its adjustments under Indiana Code § 6-3-2-2(m), and it is not entitled to summary judgment on this basis either.

Finally, even if the Court assumed that the Standard Sourcing Rules distorted Columbia Sportswear's Indiana source income for purposes of Indiana Code § 6-3-2-2(m), the Department's summary judgment claim would still fail because its adjustments to Columbia Sportswear's net income tax base were unreasonable. Specifically, the Department has explained that its adjustments sought to effect what it calls an equitable profit for each of the entities in the consolidated group consistent with the "golden rule." (See Resp't Br. at 14-15; Hr'g Tr. at 8, 24-27.) The Department's adjustments, however, attributed over 99% of the gross income to one entity, Columbia Sportswear, without adjusting its apportionment percentage at all. (See Pet'r Br. at 20-21 (citing First Stip., Ex. 8 at 9, 12).) The Court finds the attribution of nearly all of the consolidated group's gross income to Columbia Sportswear to be out of all appropriate proportion to its Indiana business activities as evidenced by its property, payroll, and sales factors, none of which the Department challenged. (See First Stip., Ex. 8 at 12.) See also Moorman Mfg. Co. v. Bair, 437 U.S. 267, 274 (1978) (explaining that because "States have wide latitude in the selection of apportionment formulas[,] a formula-produced assessment will only be disturbed when the taxpayer has proved . . . that the income attributed to the State is in fact 'out of all appropriate proportion to the business transacted . . . in that State' . . . or has 'led to a grossly distorted result'" (quoting Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 135 (1931); Norfolk & Western R. Co. v. State Tax Comm'n, 390 U.S. 317, 326 (1968))).

16

## CONCLUSION

The Department is an administrative agency and may exercise only those powers expressly or impliedly conferred by the General Assembly. See IND. CODE § 6-8.1-2-1 (2005); Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs, 628 N.E.2d 1260, 1263 (Ind. Tax Ct. 1994). Any ambiguous grants of power, therefore, must generally be resolved against the Department. See Gary Cmty. Sch. Corp. v. Indiana Dep't of Local Gov't Fin., 15 N.E.3d 1141, 1146 (Ind. Tax Ct. 2014). In this case, the Department's reliance on Indiana Code § 6-3-2-2(l)(4) was improper because that statute permits the Department to use only methods that divide the tax base, not methods that recalculate the tax base. The Department's reliance on Indiana Code § 6-3-2-2(m) was also improper because the designated evidence simply does not show that the Standard Sourcing Rules failed to fairly represent Columbia Sportswear's Indiana source income. Finally, even if Columbia Sportswear's Indiana source income was not fairly reflected under the Standard Sourcing Rules, the Department's adjustments would still be improper because they were unreasonable. For all of these reasons, the Court therefore GRANTS summary judgment in favor of Columbia Sportswear and against the Department.

SO ORDERED this 18th day of December 2015.

Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION: Randal J. Kaltenmark, Ziaaddin Mollabashy, Jessica R. Gastineau

17