ATTORNEYS FOR PETITIONER:
**MARK J. RICHARDS**
**MATTHEW J. EHINGER**
**JOSHUA W. SCHLAKE**
ICE MILLER LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**THEODORE E. ROKITA**
ATTORNEY GENERAL OF INDIANA
**LYDIA A. GOLTEN**
**THOMAS L. MARTINDALE**
**J. DEREK ATWOOD**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| PENN ENTERTAINMENT, INC. (f/k/a PENN NATIONAL GAMING, INC.),<br><br>Petitioner,<br><br>v.<br><br>INDIANA DEPARTMENT OF STATE REVENUE,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 22T-TA-00015<br>)<br>)<br>)<br>)<br>)<br>) |

FILED

Feb 28 2024, 4:30 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**February 28, 2024**

Baker, Special Judge.

PENN Entertainment, Inc., f/k/a Penn National Gaming, Inc. ("PENN"), has challenged the Indiana Department of State Revenue's (the "Department") denial of its tax protest. The Department had assessed additional corporate income taxes against Penn for the 2015, 2016, and 2017 tax years, after concluding that PENN should have included in its Indiana tax base the value of certain payments made to other state governments, as required by Indiana Code § 6-3-1-3.5(b). PENN argues it does not

have to add back those payments, claiming the Department misapplied the governing statute. PENN further claims that adding back the value of the out-of-state payments violates its rights under the United States Constitution and the Indiana Constitution.

The matter is before the Court on the parties' cross-motions for summary judgment. Upon review, the Court grants summary judgment for the Department and denies PENN's motion.

## FACTS AND PROCEDURAL HISTORY[1]

PENN, a Pennsylvania company, operated a casino in Indiana through a subsidiary company. (*See* Joint Stipulation of Facts ("Jt. Stip.") ¶¶ 1,3.) PENN also owned other entities which operated gaming and entertainment ventures in California, Delaware, Florida, Illinois, Iowa, Kansas, Maryland, Massachusetts, Maine, Missouri, Mississippi, New Jersey, New Mexico, Nevada, Ohio, Pennsylvania, and West Virginia. (*See* Jt. Stip. ¶ 4.)

On its 2015, 2016, and 2017 Indiana adjusted gross income tax ("AGIT") returns, PENN reported the value of income taxes it had paid in other states. (*See* Jt. Stip. ¶ 5.) PENN had deducted those payments from its federal income tax returns, and added the value of those taxes back to its Indiana tax base. (*See* Jt. Stip. ¶ 5.)

The Department audited PENN's AGIT returns for the years at issue. (*See* Jt. Stip. ¶ 8.) Afterwards, the Department determined certain payments by PENN to other state governments also needed to be added back to the calculation of PENN's Indiana tax base. (*See* Jt. Stip. ¶ 10.) As a result, the Department determined PENN owed

---

[1] The parties have designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. *See* Ind. Access to Court Records Rule 9(A)(2)(d) (2024).

additional taxes for 2015, 2016, and 2017, plus interest and penalties.  (*See* Jt. Stip. ¶ 10.)

PENN protested the Department's proposed assessments of additional taxes. (*See* Jt. Stip. ¶ 10.)  Following an administrative hearing, the Department eliminated the assessment of penalties but otherwise denied PENN's protest.  (*See* Jt. Stip. ¶ 11.) Next, PENN requested rehearing, which the Department denied.  (*See* Jt. Stip. ¶ 12.)

On November 16, 2022, PENN filed this original tax appeal.  The Department moved for summary judgment on November 6, 2023, and PENN cross-moved for summary judgment on November 7.  The Court held a hearing on the parties' cross-motions on January 26, 2024.  Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The Tax Court reviews final determinations of the Department *de novo.*  IND. CODE § 6-8.1-5-1(i) (2024).  The Court is therefore not bound by the evidence or the issues raised at the administrative level.  *Subaru-Isuzu Auto., Inc. v. Indiana Dep't of State Revenue*, 782 N.E.2d 1071, 1073 (Ind. Tax Ct. 2003).

"Summary judgment is designed to provide speedy resolution to those cases – or those parts of cases – that may be determined as a matter of law because there are no factual disputes."  *Vodafone Ams., Inc. v. Indiana Dep't of State Revenue*, 991 N.E.2d 626, 627 (Ind. Tax Ct. 2013) (citations omitted).  A court shall grant a motion for summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ind. Trial Rule 56(C).  Cross-motions for summary judgment do not alter the standards for determining whether summary judgment is warranted.  *Horseshoe*

*Hammond, LLC v. Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), *review denied*. The parties have stipulated to all material facts, leaving only questions of law.

## ANALYSIS

### I. Application of Indiana Code § 6-3-1-3.5

The parties disagree as to whether specific payments submitted by PENN to other state governments should, by statute, be included in the calculation of PENN's Indiana adjusted gross income. "When this Court is confronted with a question of statutory construction, its function is to determine and implement the intent of the legislature in enacting that statutory provision." *DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Loc. Gov't Fin.*, 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (citation omitted). "In general, the best evidence of the legislature's intent is found in the actual language used within the statute itself." *Id.* (citation omitted). The General Assembly instructs that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." IND. CODE § 1-1-4-1(1) (1991). "Nevertheless, a statute must not be construed so narrowly that it does not give effect to legislative intent because the intent of the legislature embodied in a statute constitutes the law." *Gen. Motors Corp. v. Indiana Dep't of State Revenue*, 578 N.E.2d 399, 404 (Ind. Tax Ct. 1991), *aff'd*, 599 N.E.2d 588 (Ind. 1992) (citation omitted).

For business entities such as PENN, Indiana defines "adjusted gross income" the same as federal "taxable income" is defined in Section 63 of the Internal Revenue Code ("IRC") with certain adjustments. IND. CODE § 6-3-1-3.5(b) (2015). IRC § 63 defines taxable income as "gross income minus the deductions allowed" by the Code. 26

4

USCA § 63 (2014).  The allowable deductions include payment of state income taxes.  26 USCA § 164 (2014).

Next, the General Assembly directs Indiana businesses calculating adjusted gross income to "[a]dd an amount equal to any deduction or deductions allowed or allowable pursuant to [IRC § 63] for taxes based on or measured by income and levied at the state level by any state of the United States."  I.C. § 6-3-1-3.5(b)(3).  This subsection is known as the "add-back provision."  *See Subaru-Isuzu*, 782 N.E.2d at 1076.

PENN does not deny that some of its out-of-state tax payments should be included in its Indiana tax base.  PENN instead argues the specific out-of-state payments at issue, which are discussed below, should not be added to its Indiana tax base because the payments were for "un-apportioned excise taxes, privilege fees, and other non-tax payments" that are not measured by income.  (Pet'r Br. Supp. Mot. Summ. J. ("Pet'r Br.") at 13.)

In *Consolidation Coal Company v. Indiana Department of State Revenue*, 583 N.E.2d 1199 (Ind. 1991), the Indiana Supreme Court considered whether an out-of-state tax, specifically "West Virginia's Business and Occupation Tax," was "based on or measured by income" for purposes of Indiana Code section 6-3-1-3.5(b)(3).  *Consolidation Coal Co. v. Indiana Dep't of State Revenue*, 583 N.E.2d 1199, 1200 (Ind. 1991).  The Court determined the General Assembly's use of the phrase "based on or measured by income" in the statute "suggests a broader inquiry than would be appropriate if the legislature had provided for adding back, say, 'taxes on income.'"  *Id.* at 1201.  In essence, Indiana Code section 6-3-1-3.5(b)(3) permits "the add-back of

5

taxes based on income but not those such as property or excise taxes." *Id.* at 1202. Turning to the tax in question, the Court noted it was "a tax on the privilege of doing business in that state." *Id.* Even so, West Virginia calculated the amount of tax owed using "gross proceeds of sales," derived from "tangible property," rather than the value of property held. *Id.* The Indiana Supreme Court determined West Virginia's privilege tax was measured by income and thus subject to the add-back provision. *Id.*; *see also Aztar Ind. Gaming Corp. v. Indiana Dep't of State Revenue*, 806 N.E.2d 381, 386 (Ind. Tax Ct. 2004) (determining payments made for Indiana's Riverboat Wagering Tax were subject to the add-back provision because the tax was measured by receipts, even though the tax was an excise tax), *review denied*.

This Court reached a contrary result on different facts in *First Chicago NBD Corporation v. Department of State Revenue*, 708 N.E.2d 631 (Ind. Tax. Ct. 1999). In that case, this Court was called on to apply a subsection of Indiana Code § 6-5.5-1-2. *See First Chicago NBD Corp. v. Dep't of State Revenue*, 708 N.E.2d 631, 632 (Ind. Tax Ct. 1999). That statute, which defines adjusted gross income for financial institutions, included an add-back provision that was substantially similar to the one in Indiana Code § 6-3-1-3.5(b)(3). *See, e.g.*, IND. CODE § 6-5.5-1-2(a)(1)(C) (2024) (requiring add-backs for out-of-state taxes "based on or measured by income"). The Department alleged Michigan's Single Business Tax ("MSBT") was "based on or measured by income," *First Chicago*, 701 N.E.2d at 632, and thus First Chicago NBD Corporation needed to add the value of its MSBT payments back to its Indiana taxable income.

The Tax Court disagreed with the Department, determining the MSBT was a value added tax. Although the taxpayer's income was part of the calculation of the tax

6

owed, the income was "merely an effort to measure, in part, the value added by the production of a product." *Id.* at 634. At its core, the MSBT measured the value added from the production process, not income derived from sales. *Id.* Further, the Tax Court noted Michigan's courts have determined the MSBT is not a tax measured by income. *Id.* The Court concluded the MSBT was not "based on or measured by income," concluding "no tax that is measured by income *adds* costs of production." *Id.* at 635. As a result, First Chicago did not have to add back the value of the MSBT payments to its Indiana income base. *Id.*

In the current case, the parties focus on PENN's out-of-state payments to ten states. (*See* Pet'r Br. at 27; Resp't Br. Supp. Summ. J. at 12-14.) Each state's taxes may be summarized as follows:

Illinois: PENN paid taxes to the State of Illinois pursuant to 230 Illinois Compiled Statutes act 10, section 13(a), which imposes a "wagering tax" on licensed gambling companies, calculated based on "adjusted gross receipts." *See* 230 ILL. COMP. STAT. 10/13 (2015).

Maine: Under Revised Maine Statutes Annotated title 8, section 1036, PENN paid an amount for the state's administrative expenses, measured by "gross slot machine income," as well as percentages of "income from table games" and "net slot machine income." *See* ME. REV. STAT. tit. 8, § 1036 (2015).

Massachusetts: Massachusetts General Laws chapter 23K, section 55 requires gaming licensees to pay daily taxes calculated by "gross gaming revenue." MASS. GEN. LAWS ch. 23K, § 55 (2015).

Mississippi: PENN paid a license fee, calculated by "gross revenue," under

Mississippi Code Annotated section 75-76-177.  MISS. CODE ANN. § 75-76-177 (2015).

Missouri:  Missouri Revised Statutes section 313.822 required PENN and other gaming companies to pay a tax based on "adjusted gross receipts."  MO. REV. STAT. § 313.822 (2015).

Nevada:  Under Nevada Revised Statutes section 463.370, the state collects a license fee from gaming companies, measured using the companies' "gross revenue." Nev. Rev. Stat. § 463.370 (2015).

New Mexico:  PENN paid the state "an excise tax" under New Mexico Statutes Annotated section 60-2E-47.  N.M. STAT. ANN. § 60-2E-47 (2015).  The tax is calculated based on "the net take" of for-profit gaming licensees.  Id.

Ohio:  During the years at issue, PENN paid Ohio a "casino tax" that is calculated from "gross casino revenue."  Ohio Revised Code Annotated § 5753.02.  OHIO REV. CODE ANN. § 5753.02 (2015).

Pennsylvania:  Two statutory taxes are at issue, a "table game tax" under 4 Pennsylvania Consolidated Statutes section 13A62, and a "slot machine tax" under 4 Pennsylvania Consolidated Statutes section 1403.  4 PA. CONS. STAT. §§ 13A62, 1403 (2015).  Under both statutes, Pennsylvania calculates the amounts due by "daily gross" revenue.

West Virginia:  Finally, PENN paid West Virginia a tax for "the privilege of holding a [gaming] license" under West Virginia Code section 29-22C-26.  W. VA. CODE § 29-22C-26 (2015).  The tax is calculated based on "adjusted gross receipts from the operation of West Virgina Lottery table games."  Id.

These taxes are more like the privilege tax at issue in *Consolidation Coal* than

the value added tax involved in *First Chicago*. In *First Chicago*, income was incidental

to the calculation of value added through a production process. The out-of-state taxes

in PENN's case more closely resemble the licensing tax discussed in *Consolidation*

*Coal*. Even though Mississippi and Nevada style their payment requirements as

licensing fees, they calculate amounts owed using a licensee's gaming income.

PENN argues that the out-of-state payments should not be included in the

calculation of PENN's Indiana adjusted gross income because Indiana Code section 6-

3-1-3.5 sets forth a "net income tax," not a gross income tax. (Pet'r Br. at 33-34.) In

support, PENN cites *Smith v. Indiana Department of State Revenue*, 122 N.E.3d 489,

(Ind. Tax Ct. 2019), in which the Court distinguished between gross income and

adjusted gross income. But *Smith* provides little guidance here because it is

procedurally and factually dissimilar to the current case. In *Smith*, the key question was

whether the Department had timely issued assessments to taxpayers, and the Court's

discussion of gross income versus adjusted gross income was in the context of the

statute of limitations set forth in Indiana Code section 6-8.1-5-2(b) (2011). *See Smith v.*

*Indiana Dep't of State Revenue*, 122 N.E.3d 489, 494 (Ind. Tax Ct. 2019). PENN's case

involves a different statute. In any event, the out-of-state tax at issue in *Consolidation*

*Coal* was a tax on gross proceeds, and the Indiana Supreme Court determined

Consolidation Coal's tax payments should be added back to its Indiana adjusted gross

income. 583 N.E.2d at 1202.

Next, PENN argues requiring it to add back the out-of-state tax payments would

conflict with the Department's regulations governing adjusted gross income. (Pet'r Br.

at 34.) This argument misses the mark. PENN cites: (1) 45 IAC 3.1-1-42 (consistency

9

in taxpayer reporting); (2) 45 IAC 3.1-1-55 (defining "income producing activity" in the context of sales other than sales of tangible personal property); (3) 45 IAC 3.1-1-6 (explaining when a corporation is considered "taxable in another state" for purposes of Indiana's adjusted gross income tax); (4) 45 IAC 3.1-1-74 (explaining the circumstances under which a taxpayer may get credit for paying income tax in another state); (5) 45 IAC 15-3-2 (discussing the relationship between statutes and regulations); and (6) 45 IAC 15-5-7(e) (defining income in the context of the statute of limitations for assessments). (*See* Pet'r Br. at 34.) None of these regulations conflicts with the application of the add-back provision to PENN's out-of-state tax payments.

PENN also points to the following in support of its argument that out-of-state taxes are merely excise taxes not subject to being added back: (1) the legislative history of the add-back provision; (2) the Auditor's Guide that the Department used at the time the provision was enacted; (3) the Audit Manual the Department currently uses; (4) guidance from the Multistate Tax Commission, of which Indiana is an associate member; and (5) an expert opinion provided by Professor Richard Pomp. (Pet'r Br. at 21-23, 25, 30-32.) This Court has reviewed these materials but cannot depart from the "broader inquiry" into the nature of PENN's out-of-state tax payments, as required by the Indiana Supreme Court in *Consolidation Coal*. *Consolidation Coal*, 583 N.E.2d at 1201. In summary, the out-of-state taxes at issue are based on income or measured by income for purposes of the add-back provision, and by statute PENN's tax payments must be included in its Indiana tax base for the years in question. The law is with the Department on this issue.

10

## II. PENN's Federal Constitutional Claims

PENN argues the Department's proposed assessments under the add-back provision, as applied here, violate PENN's rights under the Commerce Clause, the Due Process Clause, and the Equal Protection Clause. (Pet'r Br. at 40.) This Court addresses each in turn, noting as a general principle that "[d]uly promulgated statutes enjoy a strong presumption of constitutionality, and the party challenging the constitutionality bears the burden to overcome the presumption." *Mid-America Mailers, Inc. v. State Bd. of Tax Comm'rs*, 639 N.E.2d 380, 386 (Ind. Tax Ct. 1994) (citation omitted).

### A. Commerce Clause

Section Eight, Clause Three of the United States Constitution provides, "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . . ." U.S. CONST. art. I, § 8, cl. 3. "The Commerce Clause forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation." *MeadWestvaco Corp. v. Illinois Dep't of Revenue*, 553 U.S. 16, 24 (2008) (citations omitted). A tax complies with the Commerce Clause's requirements when the tax "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). PENN claims the Department's proposed assessments violate all four elements of the standard set forth in *Complete Auto*.

11

## Substantial Nexus

The "substantial nexus" element of the standard is met when "an entity has a physical presence in the taxing state." *Asplundh Tree Expert Co. v. Indiana Dep't of State Revenue*, 38 N.E.3d 744, 749 (Ind. Tax Ct. 2015) (citation omitted), *review denied.* There is no dispute that PENN owns and operates a casino in Indiana through a subordinate business entity.

PENN argues its out-of-state tax payments have no connection with Indiana because all of the transactions on which the payments are based occurred outside Indiana. (Pet'r Br. at 41-42.) But PENN's physical presence in the state is dispositive. *See Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue*, 572 N.E.2d 481, 485 (Ind. 1991) (taxpayer's physical presence in State established sufficient nexus; the fact that the transaction at issue – a sale of an intangible asset – occurred out-of-state was not relevant).

## Fair Apportionment

A state tax on interstate commerce must be fairly apportioned to prevent excessive taxes on transactions "as each state takes its bite out of the interstate transaction as it passes through each taxing state." *Id.* There are two tests for fair apportionment: a tax must be both "internally and externally consistent." *Indiana-Kentucky Elec. Corp. v. Indiana Dep't of State Revenue*, 598 N.E.2d 647, 656 (Ind. Tax Ct. 1992) (citations omitted).

"Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would also not bear." *Oklahoma Tax Comm'n v. Jefferson Lines,*

12

*Inc.*, 514 U.S. 175, 185 (1995). "This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Id.*

PENN argues the Department's application of the add-back provision to its out-of-state payments violates the internal consistency test because Indiana added back the full amount of the payments, and if every other state did not, PENN's tax debt would increase by "eighteen times" the regular amount. (Pet'r Br. at 44.) But PENN's argument relates to the size of its tax bill, not whether the tax at issue disadvantages interstate commerce. And PENN concedes elsewhere that Indiana apportions its fair share of interstate taxes only after the add-back process is complete. (Pet'r Br. at 25.) Also, PENN points to no evidence that Indiana will fail to follow the standard apportionment process here. Thus, the Department's assessments will not disadvantage interstate commerce even if other states sought to add back PENN's out-of-state payments in their jurisdictions.

Turning to the test of external consistency, courts look to "the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Jefferson Lines*, 514 U.S. at 185 (citations omitted).

PENN claims the Department's assessments draw in value that is not fairly attributable to Indiana because the payments resulted from purely out-of-state transactions. (Pet'r Br. at 45.) But PENN has conceded that the Department can add back the value of the federal tax deductions PENN took for payment of other states'

13

income taxes, as long as Indiana takes only its portion of the added-back amount. (*Id.* at 25.) The Department will likewise apportion the value of the out-of-state payments at issue here, so that Indiana will tax only value fairly attributable to Indiana. The Department's use of the add-back provision here is not externally inconsistent.

**Nondiscrimination Against Interstate Commerce**

A state "impermissibly discriminates against interstate commerce when the state's taxing power effectively increases the tax burden for out-of-state transactions, thereby coercing taxpayers to conduct intrastate rather than interstate business." *Rhoade v. Indiana Dep't of State Revenue*, 774 N.E.2d 1044, 1050 (Ind. Tax. Ct. 2002) (citation omitted). PENN argues the Department's assessments are discriminatory because they would result in PENN being doubly taxed for the same transaction – once in the state in which the transaction occurred, and then a second time in Indiana. (Pet'r Br. at 42.) But there is no dispute that once the Department adds back the out-of-state tax payments to PENN's tax base, the Department must apportion the payments to take only Indiana's fair share of the payments. And nothing suggests that the Department, in following that process, will coerce PENN or other business taxpayers to engage in intrastate rather than interstate business. Under these circumstances, the assessments do not discriminate against interstate commerce.

**Fair Relation of Taxation to Services Provided by State**

"[C]itizens of the State of Indiana are expected to contribute their fair share of the state tax burden which pays for the multitude of services provided to the citizens by the State." *Hoosier Energy*, 572 N.E.2d at 485. PENN argues adding back the value of its out-of-state tax payments to its adjusted gross income is so disproportionate as to

14

distort its tax base out of all fair relation to the benefits Indiana provides. (Pet'r Br. at 46.) PENN cites *Columbia Sportswear USA Corp. v. Indiana Department of State Revenue*, 45 N.E.3d 888 (Ind. Tax Ct. 2015), *review denied*, but that case is inapplicable. That case does not address the Commerce Clause. *See Columbia Sportswear USA Corp. v. Indiana Dep't of State Revenue*, 45 N.E.3d 888 (Ind. Tax Ct. 2015), *review denied*. In any event, there is no dispute that the Department must apportion the out-of-state tax payments so that PENN pays only Indiana's fair share of those payments.

Finally, PENN argues the Commerce Clause envisions that states must "apportion 'net income' not 'gross income' or 'gross receipts' . . . ." (Pet'r Reply Br. at 24.) But the United States Supreme Court has "rejected this formal distinction" between gross receipts and net income when considering whether a state tax violates the Commerce Clause. *Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 551 (2015). PENN has failed to demonstrate the Department's assessments violate the Commerce Clause.

### B. Due Process Clause

The Fourteenth Amendment to the Constitution guarantees no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. "Substantive due process requires that taxation not be arbitrary, oppressive, or unjust." *Spencer Cnty. Assessor v. AK Steel Corp.*, 61 N.E.3d 406, 420 (Ind. Tax Ct. 2016) (citations omitted), *review denied*. The United States Supreme Court has stated:

> The Court applies a two-step analysis to decide if a state tax abides by the
> Due Process Clause. First, and most relevant here, there must be some

15

definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax. Second, the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State.

*North Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2220 (2019) (internal quotations and citations omitted).

PENN argues the Department should not have applied the add-back provision to the out-of-state payments because they stem from transactions with no connection to Indiana. (Pet'r Br. at 50.) In *Kaestner*, the United States Supreme Court was asked to determine whether the State of North Carolina could tax a trust whose beneficiary lived in North Carolina, even if neither the trust nor the trustee were based in the state, the trust was governed by a different state's laws, and the beneficiary neither received any distributions from the trust during the years in question nor had the right to demand any distributions. *Kaestner*, 139 S. Ct. at 2223. The trust argued it had insufficient links to be subjected to North Carolina's taxing authority, and being forced to pay taxes to that state violated its rights under the Due Process Clause. *Id.* at 2219. The Court concluded the state's relationship to the object of its tax was "too attenuated" to justify exercise of the state's power to tax. *Id.* at 2222.

By contrast, PENN has ample contacts with Indiana due to operating a casino here through a subsidiary. And PENN has conceded the Department has a sufficient connection to at least some of its out-of-state tax payments, because PENN included its out-of-state income tax payments in its Indiana tax base for the years in question.

Next, PENN further argues the income the Department attributes to PENN from these payments is not rationally related to Indiana's taxing authority. (Pet'r Br. at 50.) A tax imposed by a State "cannot be 'out of all appropriate proportion to the business

16

transacted by the appellant in that State.'" *Exxon Corp. v. Wisconsin Dep't of Revenue*, 447 U.S. 207, 220 (1980) (quoting *Hans Rees' Sons v. State of N. Carolina ex rel. Maxwell*, 283 U.S. 123 (1931)).

In this case, the Department has proposed to apportion the added-back amounts so that Indiana will tax only its proportional share of PENN's income. PENN argues the amount added to its tax base is disproportionately high, but PENN conducts business in numerous states, and the out-of-state tax payments at issue reflect PENN's multifaceted operations. Ultimately, Indiana will take only its proportional share of the payments, in compliance with the requirements of the Due Process Clause.

### C. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "[T]he Equal Protection Clause does not require that all persons be treated identically or equally; rather, equal protection analysis is implicated only if an individual has been treated differently from similarly situated persons." *UACC Midwest, Inc. v. Indiana Dep't of State Revenue*, 667 N.E.2d 232, 239 (Ind. Tax Ct. 1996) (citation omitted). "Consequently, under federal equal protection analysis, absent a showing that the challenged classification involves a suspect class or trammels on fundamental rights, the classification is presumed valid and will be upheld as long as it is rationally related to a legitimate state interest." *AK Steel Corp.*, 61 N.E.3d at 417 (citation omitted). "Sufficient differences in the method of doing business may be justification for separate classification and differential tax treatment." *Sunshine*

17

*Promotions, Inc. v. Ridlen*, 483 N.E.2d 761, 766 (Ind. Ct. App. 1985) (citations omitted), *trans. denied*.

In support of its Equal Protection Clause claim, PENN notes the Department's audit manual provides that some out-of-state tax payments are not necessarily subject to being added back. (Pet'r Br. at 52.) PENN reasons that the Department is treating PENN unfairly by inconsistently enforcing the add-back provision, that is, requiring it to add back the payments at issue while excluding other tax payments. (Pet'r Br. at 52.)

PENN does not point to any example of the Department applying the add-back provision against another taxpayer in a way that resulted in disparate treatment. Further, the audit manual discusses adding back out-of-state taxes, but the manual does not definitively list which taxes must or must not be added back. Instead, the manual states, "[b]ased on the applicable Indiana statutes, regulations, and case law, and analysis of the specific application of the taxes, DOR determined that taxes [that] may not be required to be added back could include, but [are] not limited to the following [list of out-of-state taxes]." (*See* Jt. Stip. Ex. B. at JSF000044- JSF000045). The manual further provides, "[b]ased on the applicable Indiana statutes, regulations, and case law, and analysis of these specific application of the taxes, DOR determined that taxes [that] required being added back include, but [are] not limited to the following [list of out-of-state taxes]." (*Id.* at JSF000045). Thus, the manual does not mandate disparate treatment of taxpayers. Further, although PENN claims the audit manual does not require the Department to add back out-of-state excise taxes, the manual specifically lists excise taxes from Hawaii, Oregon, and Tennessee as potentially being subject to the add-back provision. (*Id.* at JSF000045). PENN has failed to prove

18

disparate treatment, and for that reason, its Equal Protection claim must fail. *See UACC Midwest,* 667 N.E.2d at 240 (rejecting cable broadcaster's Equal Protection claim; petitioner could not demonstrate the Department had treated it differently from similarly situated businesses).

On a related topic, PENN also argues the Department's assessments violate Article 1, section 23 of the Indiana Constitution. PENN's argument on this constitutional provision merely states that the Equal Protection Clause and section 23 apply the "same standard." (Pet'r Br. at 52 n.118.) But the Indiana Supreme Court has determined otherwise. *See Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994) (setting forth separate standard for addressing claims under section 23). The Court will not further address the issue in the absence of argument from PENN under the *Collins* standard.[2]

### III. PENN's Preserved Indiana Constitutional Claim

PENN argues the Department's proposed assessments, as applied here, violate the Indiana Constitution's Due Course of Law Clause. (Pet'r Br. at 40.) Article 1, Section 12 provides, in relevant part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." IND. CONST. art. 1, § 12. The party claiming a statute violates the Indiana Constitution bears the burden of proof, and all doubts are resolved against that party. *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind. 1998).

---

[2] PENN cites *Championship Wrestling, Inc. v. State Boxing Comm'n*, 477 N.E.2d 302 (Ind. Ct. App. 1985), *trans. denied*, for the principle that claims under the Equal Protection Clause and section 23 are addressed using the same standard. The Indiana Court of Appeals issued its decision in *Championship Wrestling* prior to the Indiana Supreme Court's decision in *Collins*. The Supreme Court's precedent is controlling.

19

Indiana's courts employ the same methodology when analyzing a claimed denial of procedural due process of the Due Course of Law Clause as the Supreme Court uses to analyze claimed violations of the Due Process Clause. *Doe v. O'Connor*, 790 N.E.2d 985, 988 (Ind. 2003). As for substantive due process, the Indiana Supreme Court has stated, "there is a strain of Article I, Section 12 doctrine that is analogous to federal substantive due process. . . . [I]n general this doctrine imposes the requirement that legislation interfering with a right bear a rational relationship to a legitimate legislative goal . . . ." *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 976 (Ind. 2000).

PENN's claim under the Due Course of Law Clause is substantive in nature, arguing the Department's application of add-backs here is neither "rational" nor "fundamentally fair." (Pet'r Br. at 50.) But Indiana has a rational interest in ensuring that taxpayers' income base includes amounts that the taxpayers deducted from their federal income taxes. PENN acknowledges the general point, because it did add back some amounts to its Indiana tax base reflecting payments of other state's income taxes. The added-back amounts are substantial (before Indiana calculates and takes only its proportional share), but PENN is a large business with operations in many states. The Court cannot conclude the Department's proposed assessments violate PENN's substantive due process rights under Indiana's Due Course of Law Clause.

In summary, as to the parties' arguments under the federal and state constitutions, the law is with the Department rather than PENN. The Department is entitled to judgment as a matter of law.

20

**CONCLUSION**

For the foregoing reasons, the Court DENIES PENN's motion for summary judgment and GRANTS the Department's motion for summary judgment.

SO ORDERED this 28th day of February 2024.

_____
John G. Baker
Special Judge, Indiana Tax Court

Distribution:
Mark J. Richards, Matthew J. Ehinger, Joshua W. Schlake, Lydia A. Golten, Thomas L. Martindale, J. Derek Atwood